GWEN HUSTON HANSEN, APPELLANT, *v.*
HUGH S. COLLETT, RESPONDENT.

No. 4562

April 4, 1963            380 P.2d 301

*Leo J. Puccinelli,* of Elko, and *Leonard W. Elton,* of Salt Lake City, for Appellant.

*Orville R. Wilson,* of Elko, for Respondent.

## OPINION

By the Court, BADT, C. J.:

This is an appeal from a summary judgment in favor of respondent, defendant below, in an action against him as a practicing physician and surgeon for $40,000 damages, growing out of his negligent failure to X-ray the left arm and pelvis of appellant, fractured in an automobile accident resulting from the negligence of one Shelby Hatch. The basis of the summary judgment was respondent's third defense that appellant, for the sum of $4,000, had made a settlement with Hatch for all claims and damages in any way growing out of her personal injuries resulting from said accident, and releasing, acquitting, and discharging Hatch therefrom. Appellant admitted her execution of the release to Hatch, but asserted that said settlement was made with Hatch as the result of his negligence and of no other.

Appellant fairly states the issue thus: "Whether or not a release by an injured party of one who negotiated a settlement in regard to the original injury precludes an action by the injured person against a physician or surgeon for negligent treatment of the injury where the injured person claims new and additional injury directly and proximately caused by the negligence and carelessness of the physician and surgeon and further where the injured party makes claim that there has been no compensation for the injuries received by reason of the negligence and carelessness of the said physician and surgeon."

In pertinent part the release executed by appellant was as follows: "FOR AND IN CONSIDERATION of the payment to me/us at this time of the sum of FOUR THOUSAND AND no/100 Dollars ($4,000.00), the receipt of which is hereby acknowledged, I/we, being of lawful age, do hereby release, acquit and forever discharge Shelby Hatch of and from any and all actions, causes of action, claims, demands, damages, costs, loss of services, expenses and compensation on account of, or in any way growing out of, any and all known and unknown personal injuries and property damage resulting or to result from accident that occurred on or about the 15th day of May, 1958, at or near Wells, Nevada.

"I/we hereby declare and represent that the injuries sustained are or may be permanent and progressive and that recovery therefrom is uncertain and indefinite, and in making this release and agreement it is understood and agreed that I/we rely wholly upon my/our own judgment, belief and knowledge of the nature, extent and duration of said injuries, and that I/we have not been influenced to any extent whatever in making this release by any representations or statements regarding said injuries, or regarding any other matters, made by the persons, firms or corporations who are hereby released, or by any person or persons representing him or them, or by any physician or surgeon by him or them employed.

"It is further understood and agreed that this settlement is the compromise of a doubtful and disputed claim, and that the payment is not to be construed as an admission of liability on the part of Shelby Hatch, by whom liability is expressly denied.

"This release contains the ENTIRE AGREEMENT between the parties hereto, and the terms of this release are contractual and not a mere recital.

"I/we further state that I/we have carefully read the foregoing release and know the contents thereof, and I/we sign the same as my/our own free act.

"WITNESS OUR hands this 30th day of January, 1961, at Provo, Utah."

Just preceding the signatures, the following appeared: *"CAUTION:* This is a release. *READ IT* before signing."

Many of the cases have been determined with direct consideration to the nature of the release given. We may therefore characterize the foregoing instrument at the outset. It is by its terms a release. It is by its terms personal, and releases by its terms all further claims against Shelby Hatch and against no one else. It does not in terms contain a reservation of the right to seek compensation from the doctors treating appellant's injury, for negligence in such treatment. On the other hand, it is not a satisfaction and does not purport to acknowledge full compensation for her injuries.

Under such characterization we find two lines of authorities directly at war with each other. Most of these authorities accord recognition to the very fine annotation appearing at 40 A.L.R.2d 1075 (1955), entitled "Release of one responsible for injury as affecting liability of physician or surgeon for negligent treatment of injury," which supersedes an earlier annotation in 50 A.L.R. 1108, supplemented in 112 A.L.R. 553. Here we find that the cases gathered support the following statement: "By the weight of authority, a general release of the one responsible for the releasor's original injury bars action by the injured party against a physician or surgeon for negligent treatment of the injury."

As against such majority rule, we find much respectable authority, both in the decisions and in the work of eminent text writers, to the effect that such a release does not of and in itself release the attending physicians or surgeons from damages arising out of their negligent diagnosis or treatment of the injury, unless it was the intention of the injured person so to release them and unless the compensation received from the first tortfeasor was in full compensation of the injury suffered—both of such items depending upon proof and not susceptible of determination as a matter of law, but being jury questions.

The great volume of case law on the subject prevents a consideration of all but a few of what we consider the leading cases. As the matter is one of first impression in this state, we are at liberty to base our decision in the instant case on the basic rules laid down by either line of authorities. We have concluded that the later and "more enlightened" cases, as they have been often characterized, though constituting a numerical minority, are the better reasoned, and better promote the administration of justice.

The annotation in 40 A.L.R.2d lists 21 jurisdictions that have followed the majority rule and then proceeds (id. 1079) to analyze the theories of such cases supporting the majority rule.

There are numerous cases which discuss and support the majority rule and they include varying reasons why each particular court supported it. Perhaps it is an oversimplification but it appears to us that most of these reasons are in reality variations of two basic themes. (1) As a matter of law the original tort is considered to be the proximate cause of any injuries resulting from malpractice which occurred while treating the original injury, and consequently the original tortfeasor is liable for both injuries. Therefore a release of the original tortfeasor must release the physician, because if one liable for the whole claim is released, then the entire claim must also be extinguished. Sams v. Curfman, 111 Colo. 124, 137 P.2d 1017 (1943); Keown v. Young, 129 Kan. 563, 283 P. 511 (1930); Smith

v. Mann, 184 Minn. 485, 239 N.W. 223 (1931) ;[1] Feinstone v. Allison Hospital, Inc., 106 Fla. 302, 143 So. 251 (1932) ; Wells v. Gould, et al., 131 Me. 192, 160 A. 30 (1932) ; Adams v. De Yoe, 11 N.J.Misc. 319, 166 A. 485 (1932) ;[2] Milks v. McIver, 264 N.Y. 267, 190 N.E. 487 (1934) ; Hooyman v. Reeve, 168 Wis. 420, 170 N.W. 282 (1919).[3] (2) There should be only one satisfaction for the same injury and a failure to follow the rule might enable the injured person to recover twice for the same injury. Edmondson v. Hancock, 40 Ga.App. 587, 151 S.E. 114 (1929) ; Retelle v. Sullivan, 191 Wis. 576, 211 N.W. 756, 50 A.L.R. 1106 (1926) ;[4] Thompson v. Fox, 326 Pa. 209, 192 A. 107, 112 A.L.R. 550 (1937).

Respondent says: "The split of opinion is acknowledged by all recent decisions and we choose to quote from one which did not rule either way, but it fully recognized the situation." He then cites Trieschman v. Eaton, 224 Md. 111, 166 A.2d 892 (1961), as follows: "Appellees' real contentions are    *    *    *    that the overwhelming weight of authority is that a release of the original wrongdoer releases the doctor. In this last contention they are right.

*    *    *    *    *

"The opinions relied on by the Trieschmans in California, Minnesota and New Jersey are by Courts which either had not before followed the rule that the release of one concurrent or successive tortfeasor discharged the other, or repudiated it in reaching the result that the injured person could sue the doctor, although he had compromised his claim against the original wrongdoer. These cases hold in essence that unless the release in terms discharges the other tortfeasors or the amount paid for the release was intended to be and was full satisfaction, the earlier settlement does not bar the subsequent suit."

---

[1]Overruled in Couillard v. Charles T. Miller Hospital, Inc., infra.

[2]Overruled in Daily v. Somberg, infra.

[3]Overruled in Bolick v. Gallagher, infra.

[4]See footnote 3.

Respondent then cites the case of Farrar v. Wolfe, 357 P.2d 1005 (Okl. 1960), as an illustration of the modern adaptation of the majority rule. The opinion sets forth the two rules, citing all the jurisdictions adopting the majority rule, and concludes: "Without herein evaluating the relative merits of the majority or minority view, we follow the majority rule." We cannot reconcile ourselves, however, to using this method of disposition, in choosing to follow one rule or the other. In like maner respondent cites eight additional cases, decided after the A.L.R. annotation, which continue to follow the majority rule. These eight cases however are all from states that had theretofore followed it and apparently applied the rule of stare decisis. Such, as noted, is not the case here.

We turn, then, to an examination of the authorities and texts supporting the opposite rule, which we are inclined to follow.

We must preface this by noting that appellant does not controvert the statement that it is well-settled law that the original tortfeasor is liable for the malpractice of the attending physicians.

In Wheat v. Carter, 79 N.H. 150, 106 A. 602 (1919), plaintiff had settled with the first tortfeasor, which settlement was pleaded as a defense to his action to recover the loss sustained through the negligent use of an X-ray machine. Although the court granted that "It is settled in this state that the release of one joint tortfeasor is a bar to a suit against the others; and that is also true as to the effect of a release when the releasor's loss is caused by the concurrent misconduct of the releasee and others * * *," it held that such defense was not available. The court held that it could only be so if the plaintiff had been fully compensated for the loss sought in the second suit. It rejected the contention that plaintiff could not recover in the second suit because the original tortfeasor was originally liable for the entire loss; that inquiry must be made as to the facts of his claim and the extent of his recovery against the

166

first tortfeasor; that these issues thus raised must be determined by trial. "* * * it is permissible for him in this proceeding to show just what he was claiming when he settled with [the first tortfeasors who were not] * * * parties to the release. In other words, the release in and of itself is not a bar to the defendant's suit against the plaintiffs, but, if he has already been compensated for the loss he is seeking to recover * * * that fact is a bar to the suit."

In Ash v. Mortensen, 24 Cal.2d 654, 150 P.2d 876 (1944), plaintiff, injured in an automobile accident and having recovered judgment against the other motorist for $15,000 and having satisfied such judgment upon the payment of $5,753.22, brought a malpractice action against the doctors, alleging negligent treatment of her injuries. The release was pleaded as a bar, and the lower court entered judgment in favor of the defendant doctors. Gibson, C. J., speaking for the Supreme Court of California, in reversing, said:

"Plaintiff urges that under general principles of tort law the release of Wubben in consideration of part payment of the judgment against him does not bar this malpractice action against defendants who allegedly were negligent in treating the injuries inflicted by Wubben. Defendants, on the other hand, contend that since a person should not be twice compensated for the same injury and since plaintiff could have recovered compensation for damages resulting from the alleged malpractice in the action against Wubben, the release of Wubben and the satisfaction of the judgment in that action are a complete defense to this action.

"It is settled that where one who has suffered personal injuries by reason of the tortious act of another exercises due care in securing the services of a doctor and his injuries are aggravated by the negligence of such doctor, the law regards the act of the original wrongdoer as a proximate cause of the damages flowing from the subsequent negligent medical treatment and holds him liable therefor. [citations] But the fact that plaintiff could have obtained full compensation for all damages in the action against Wubben, the original

wrongdoer, does not establish that she has been so compensated. The independent and successive acts of Wubben and defendant doctors, differing in time and place of commission as well as in nature, produced two separate injuries and gave rise to two distinct causes of action. Plaintiff was at liberty to sue Wubben for damages resulting from the original injury alone, and to sue defendants for damages resulting from the additional injury or aggravation, in separate actions; and the order in which such actions might be brought would be immaterial. [citations] The plea of former recovery, therefore, involves a consideration of what the injured party did in fact recover in her action against the original wrongdoer rather than what she could have recovered therein. Wheat v. Carter, 79 N.H. 150, 106 A. 602; Parkell v. Fitzporter, 301 Mo. 217, 256 S.W. 239, 29 A.L.R. 1305, supra; Staehlin v. Hochdoerfer, Mo. Sup. 235 S.W. 1060; cf. Smith v. Coleman, 46 Cal.App.2d 507, 116 P.2d 133; Viita v. Dolan (Viita v. Fleming), 132 Minn. 128, 155 N.W. 1077, 1080, L.R.A. 1916D, 644, Ann.Cas. 1917E, 678.

"Defendants insist, however, that without regard to the evidence introduced in the action against Wubben, and thus without regard to the nature and extent of the recovery therein, the release of Wubben from all liability operated to discharge them from liability for any negligent aggravation of the original injury. In their view, the amount of damages sustained by plaintiff, the sum received as consideration for the release, and the relation between the two, the intention of the parties, and the fact that Wubben and defendant doctors are independent rather than joint wrongdoers, are immaterial. In other words, defendants seek to substitute a rule of law for the factual defense of double recovery. The rule contended for has been adopted in a number of jurisdictions. [citations] But the conclusion that the release of the original wrongdoer releases the attending doctor from liability for malpractice has been reached by treating the independent wrongdoers as joint tort feasors or applying, by analogy, the common-law rule of unity of discharge affecting joint tort feasors. The common-law

rule of unity of discharge is based on the concept of the unity of a cause of action against joint tort feasors, and its application to the facts of the present case would give the independent tort feasors herein an advantage wholly inconsistent with the nature of their liability. Moreover, the rule contended for by defendants would stifle compromises, favored in the law, inasmuch as the injured person could not effect a settlement with the original wrongdoer without surrendering his separate cause of action against one who, by his independent tortious act, aggravated the injury.

"A release of a cause of action against a wrongdoer is not a release of a separate or distinct cause of action against another independent wrongdoer. It follows that the mere release of Wubben from liability did not result in the discharge of the cause of action against defendants. We are of the opinion that a release of the original wrongdoer should release an attending doctor from liability for aggravation of the injury 'if there has been full compensation for both injuries, but not otherwise.' Prosser, Joint Torts and Several Liability, 25 Cal.L.Rev. 413, 435."

The same rule was applied in Dickow v. Cookinham, 123 Cal.App.2d 81, 266 P.2d 63, 40 A.L.R.2d 1066 (1954), where the court said: "While the release by its terms releases Kelly from all claims for the injuries caused by defendants, its language does not purport to release defendants.  *  *  *"

In Couillard v. Charles T. Miller Hospital, Inc., 253 Minn. 418, 92 N.W.2d 96 (1958), plaintiff, having sustained an injury as the result of a fall on a bus, compromised with the railway company which paid her $10,000 in return for a release discharging the company from all claims and demands of every kind and nature and for all injuries and damages and all that ever may be resulting or ever developing at any time in the future from such accident and injuries. The release was pleaded as a special defense. Plaintiff offered to prove that the second action in no way involved double recovery. The court referred to its earlier decisions holding to the majority rule. It said however: "This

arbitrary approach to a consideration of the effect of a release goes beyond any reasonable necessity to honor the principal of law that a litigant should not recover twice for the same injury.

* * * * *

"We think that considerations of practical justice require us to say that a plaintiff should not be compelled to surrender his claim for relief against a wrongdoer unless he has intentionally done so, or unless he has received full compensation for his claim. * * * [T]hese are questions of fact to be resolved by the jury.

* * * * *

"We, accordingly, hold that, in so far as [the previous cases] do not permit parol proof that a party to a release never was compensated for and never intended to release claims based on injuries caused by a subsequent tortfeasor for which the releasee is also liable because of the rules of proximate cause, those decisions are overruled."

In Bolick v. Gallagher, 268 Wis. 421, 67 N.W.2d 860 (1955), following an automobile accident, appellant's decedent was admitted to a hospital and there died. The estate settled the claim against the original tortfeasor. This was pleaded as a defense to an action against the hospital for damages for its negligence. The Supreme Court of Wisconsin said: "In many cases it is possible to separate injuries caused to a person by the negligence of consecutive tort-feasors. However, it is conceivable that injuries caused to a person by the negligence of consecutive tort-feasors may be impossible of division or separation. * * * [W]ere it to be determined upon the trial that any injury sustained by the wife was indivisible, and that both [the driver] and the defendant physicians as consecutive tort-feasors contributed to the single injury, the liability would be joint and several, and each would be responsible for the entire amount of the damages resulting from the single injury. In the event that upon the trial it shall be determined that any of the injuries sustained by the wife were single and indivisible and that the negligence

of both [the driver] and the defendant physicians contributed thereto, then the payment heretofore made by [the driver] and his insurer to the plaintiff will inure to the benefit of the defendants for the same damages caused by both.

\* \* \* \* \*

"Whether they shall become entitled to credit for payments made under the releases depends upon findings made at the trial with reference to the principles discussed herein."

In Daily v. Somberg, 28 N.J. 372, 146 A.2d 676, 69 A.L.R.2d 1024 (1958), plaintiff, injured in an automobile accident, sued Dealers Transport for all injuries resulting from their negligence. A mistrial resulted. While awaiting retrial, he sued the doctors who had treated him, alleging negligence, then settled with Dealers Transport for $139,000, and executed a release, releasing that company from all claims which he might have against it. On appeal from an order granting summary judgment in favor of the hospital, the court said:

"If the release of Dealer's Transport Company was actually intended to release the doctors, or if the amount paid by Dealer's actually constituted full compensation for the plaintiff's claims against Dealer's and the doctors or was accepted as such, then the plaintiff may not fairly or equitably seek further recovery. \* \* \* The release to Dealer's did not on its face suggest that there was any intent to release the doctors nor did it suggest that the plaintiff received full compensation for his injuries. On the contrary, it named only Dealer's, its successor corporation and its employee Eliot, as the releasees and it expressly set forth that the sum paid to the plaintiff was in settlement and compromise and without admission of liability. \* \* \* [W]e are satisfied that, at least here, where the release disclosed on its face that it was given to the named releasees who had denied liability and had made payment by way of compromise and settlement, the alleged wrongdoers, who were not parties to the release and had made no

payment towards satisfaction of the plaintiff's injuries, may fairly be called upon to show that the release was intended to discharge them or that the plaintiff had received full compensation."

In McKenna v. Austin, 77 U.S.App.D.C. 228, 134 F.2d 659, 148 A.L.R. 1253, plaintiff had made a settlement with Independent Taxi Owners Association and then sued for damages for personal injuries incurred in a collision of the taxicab in which she was a passenger, with an automobile operated by the defendant's employee. The defendant pleaded as a special defense the release of Independent. The sole question on the appeal was whether the first settlement agreement operated to discharge the defendant. The court referred "to the more generally prevailing rule" adopted in Kaplowitz v. Kay, 63 App.D.C. 178, 70 F.2d 782, to the effect that the release of one joint tortfeasor discharges the others. As against this, plaintiff asserted that the instrument was not a release from substantive liability but merely a covenant not to sue. Plaintiffs also asserted that the cab company and the defendant were not joint tortfeasors but acted independently and that the court should have taken evidence and decided this question as a matter of fact and that the only effect of the first settlement was to apply it as reducing pro tanto the total damage. The court, after disposing of so-called distinctions between a "release" and a "covenant not to sue," then attacks the majority rule as follows: "The rule's results are incongruous. More often than otherwise they are unjust and unintended. Wrongdoers who do not make or share in making reparation are discharged, while one willing to right the wrong and no more guilty bears the whole loss. Compromise is stifled, first, by inviting all to wait for the others to settle and, second, because claimants cannot accept less than full indemnity from one, when doing that discharges all. Many, not knowing this, accept less only to find later they have walked into a trap. The rule shortchanges the claimant or overcharges the person who settles, as the recurring volume

and pattern of litigation show. Finally, it is anomalous in legal theory, giving tortfeasors an advantage wholly inconsistent with the nature of their liability."[5]

In Black v. Martin, 88 Mont. 256, 292 P. 577 (1930), a case involving joint tortfeasors, the Supreme Court of Montana treats of the same subject matter and agrees with Professor Williston, Dean Wigmore, and Professor Throckmorton in condemning the majority rule.

"As each tort-feasor is liable for the entire damage, if one sees fit to secure acquittance for himself by compromise with the injured person, he does no wrong to those who are jointly liable with him. How can they complain if he has paid part of the damage? They are not prejudiced by the settlement, but on the contrary are benefited, for each is entitled to have the amount of any judgment rendered against him reduced by the amount paid by his cotort-feasor.

"The law favors compromises. This is especially true in tort actions, not only because they relieve the labors of courts, and avoid expense, but also because, where the parties agree between themselves upon a settlement of the claim, the result reached is frequently a more equitable adjustment than is possible to be had in a court of law. 10 Virginia Law Review, 72." In support the court quotes at length from Carey v. Bilby, 63 C.C.A. 361, 129 F. 203.

Hicklin v. Anders, 201 Or. 128, 253 P.2d 897, 269 P.2d 521 (1953), while in several respects distinguishable from the facts of this case, rejects the majority rule and approves the cases adopting the minority rule, citing Pennington v. Bevering, 17 S.W.2d 772 (Tex.Com. App.) ; Black v. Martin, 88 Mont. 256, 292 P. 577, 581; and Dean Wigmore's famous and often-quoted statement that the majority rule is a "surviving relic of the Cokian period of metaphysics."

---

[5]The court spelled out a formula in the second action for apportioning the recoveries in the first action. The dissenting opinion criticizes such formula. But whether or not the suggested formula should be adopted in any given case, avenues are available to the court in all cases to prevent a double recovery, which is one of the main supports of the foundation for the majority rule.

MERRILL, Circuit Judge (formerly chief justice of this court), speaking for the United States Circuit Court of Appeals, Ninth Circuit, in Rudick v. Pioneer Memorial Hospital, 296 F.2d 316 (1961), approves Hicklin v. Anders.

Prosser treats the subject in this manner:

"As to the release itself, the common law rule has been changed by statute in a number of states. Without a statute a strong minority of the courts have held that the release does not discharge the second tortfeasor if it provides in terms that it shall not do so. Some of them even have recognized an accompanying oral agreement to that effect, and have met the objection of the parol evidence rule with the argument that the second tortfeasor is not a party to the instrument. Still others have accomplished the same result by construing a release with reservation of rights against others as nothing more than a covenant not to sue.

"The only desirable rule would seem to be that a plaintiff should never be compelled to surrender his cause of action against any wrongdoer unless he has intentionally done so, or unless he has received such full compensation that he is no longer entitled to maintain it. Where there has been such full satisfaction, or where it is agreed that the amount paid under the release is so received, no claim should remain as to any other tortfeasor; but these are questions of fact, and normally to be determined by the jury, where the amount of the claim is unliquidated.  *  *  *" Prosser, Torts 245 (2d ed. 1955).

Professors Harper and James seem to be in complete agreement with Prosser. 1 Harper and James, The Law of Torts § 10.1, p. 711 (1956).

Both Prosser and Harper and James properly indicate the clear distinction between a release and a satisfaction, and we agree with their conclusion that the confusion of many of the courts is due to a failure to recognize this distinction. They also treat of a distinction between a release and a covenant not to sue. Our

conclusion in the instant case could probably be supported by treating the release as a covenant not to sue in accordance with the reasoning contained in some of the cases. However, we do not choose to take this approach.

In support of our adoption of what is referred to as the "minority rule" or "the modern rule" or "the more enlightened rule" we might have justifiably simply rested our conclusion upon the following: "We have here two successive torts, the first by Hatch, the second by the doctor. The torts were neither joint nor concurring. They were distinct, separate and independent. No pertinent logical conclusion can be drawn from the statement that the doctor's alleged tort would not have occurred 'but for' Hatch's tort. Plaintiff settled with Hatch and with him alone and with no one else, for the injuries negligently caused by him, and by him alone and by no one else. This is the clear purport of the 'release' executed by appellant. No double recovery would follow. We reject the contrary conclusion (based on a legal concept that has in our opinion been thoroughly discredited) that 'because the original tort is the proximate cause of the added damages resulting from the negligence of the doctor,' and plaintiff *could have* recovered same in an action against Hatch, her release of Hatch released the doctor."

Respondent seeks to sustain the summary judgment by reason of the Uniform Joint Obligations Act, NRS 101.010–101.080. Appellant asserts that the act has no application, because the torts here involved were separate and distinct torts. 101.020 defines "obligation" as including liability in tort, and 101.030 defines the effect of a judgment against one or more of several obligors, or against one or more joint, or joint and several obligors, as not discharging a co-obligor not a party to the proceedings wherein the judgment was rendered. The last-named section does not apply here, as there were no proceedings and there was no judgment. Section 101.040 merely provides that the amount or value of any consideration received by the obligee

from one or more of several obligors or of joint, or joint and several obligors, in whole or partial satisfaction, *shall be credited* to the extent of the amount received. Section 101.050 provides for a release or discharge of one obligor, but reserving in writing the right to proceed against co-obligors, and *subject to the provisions of 101.040*, as noted above, and in the absence of a reservation of rights, shall discharge co-obligors only to the extent provided in NRS 101.060, which follows. That section then provides, under varying circumstances which on their face require the proof of facts, as to how a payment made by the first obligor shall be apportioned with reference to claims against co-obligors. Accordingly, the act cannot of itself support a summary judgment.

In remanding the case for trial it will be well to define the issues to be tried by the court.

(1) Our construction of the release leaves no issue as to the intent of the plaintiff in executing same.

(2) Our rejection of the "majority rule" disposes of the special defense that plaintiff, by releasing Hatch, thereby released the defendant.

(3) The Uniform Joint Obligations Act (NRS 101.010–101.090) has no application to the issues.

(4) As to compensation for her injuries, the jury may be instructed that plaintiff, by her compromise settlement with Hatch, has been fully compensated for the damages directly resulting from the latter's tort (without stating the amount of such compensation), but not including damages alleged to be the proximate result of defendant's alleged negligent diagnosis and treatment, or diagnosis or treatment of her injuries.

(5) The issues, then, remaining to be tried will be the questions of defendant's negligence, if any, and the damages to plaintiff, if any, proximately caused thereby.

Reversed with costs and remanded.

McNAMEE and THOMPSON, JJ., concur.