*1433
 
 OPINION
 

 Per Curiam:
 

 FACTS
 

 Laura Russ (“Laura”) and her daughter were involved in an automobile accident with Scott Haigh (“Haigh”) on October 3, 1991. Laura was driving a 1990 Chevrolet Astro Van, manufactured by General Motors Corporation (“General Motors”), a Delaware corporation, and sold to Laura by Fairway Chevrolet (“Fairway”), a Nevada corporation. The van collapsed in the accident, forcing the engine compartment through a fire wall and pinning Laura’s legs against the acceleration and brake pedals.
 

 Haigh’s insurer, Hawkeye Security (“Hawkeye”), negotiated a settlement with Laura. In exchange for $50,000.00, Laura signed a form release on December 27, 1991. The form release stated that Laura released and forever discharged Haigh and his wife Adelaida Haigh, their agents and servants, and all other persons, firms, and corporations from any and all actions, claims, or demands arising out of the October 3, 1991 accident.
 

 Laura and her husband Chad Russ (“Russes”) subsequently filed a complaint for injuries arising out of the October 3, 1991 accident against General Motors and Fairway. First, the complaint alleged that the Chevrolet Astro Van was defective, dangerous and had inadequate warnings. Second, the complaint alleged that Laura’s injuries were the result of negligent design and manufacture, and Laura’s husband was entitled to damages for loss of consortium. Third, the complaint alleged that General Motors and Fairway breached implied and express warranties.
 

 While preparing a defense to the Russes’ complaint, General Motors discovered that Laura had signed the general release with Hawkeye. Accordingly, General Motors filed a motion for summary judgment alleging that no genuine issue of fact existed as to General Motors’ liability. Fairway joined in the motion. General Motors and Fairway argued that when the release stated “all other persons, firms, and corporations whomsoever,” it referred to General Motors and Fairway, thereby excluding them from liability for any injuries arising out of the October 3, 1991 accident.
 

 The Russes’ sole argument during the summary judgment
 
 *1434
 
 proceedings was that Laura did not intend to release General Motors or Fairway from liability when she signed the release. The Russes presented a declaration of their counsel’s legal assistant, Guy F. Potter (“Potter”), who conducted the negotiations with Hawkeye. The Potter declaration stated that it was always Potter’s intention, and that of Hawkeye’s representative, that the release would be for the benefit of Hawkeye and its insureds. Potter’s declaration asserted that there was no intention to release General Motors or Fairway from liability in connection with Laura Russ’s accident, and that Potter communicated no such intent to Hawkeye. According to Potter’s declaration, at the time the release was executed, no claim had been filed or contemplated against General Motors or Fairway on behalf of the Russes. Further, while preparing his declaration, Potter spoke with Hawkeye’s representative. The representative stated that it was never the intention of Hawkeye to release General Motors or Fairway because Hawkeye’s duty was solely toward its insureds, the Haighs, and its own interests as an insurance carrier.
 

 Despite the evidence presented in the Potter declaration, the district court granted General Motors and Fairway’s summary judgment motion. The district court concluded that the Potter declaration contained statements that could not be considered for purposes of summary judgment because they were either outside his personal knowledge or were hearsay. Even though Potter’s declaration also contained admissible evidence, the district court ruled that it was insufficient to raise a genuine issue of fact as to the liability of General Motors or Fairway. The district court then ruled that the words contained in the release were clear and unambiguous, stating that the class of released entities defined in the release included not only General Motors and Fairway but all other firms and corporations.
 

 Subsequently, General Motors and Fairway filed motions for attorney’s fees and/or sanctions. The district court awarded attorney’s fees pursuant to NRS 18.010 and NRCP 11. In its order for attorney’s fees, the district court concluded that the Russes’ complaint was brought without reasonable grounds and was not warranted by existing law or a good faith argument for the extension, modification or reversal of existing law. In this appeal, the Russes contend that the district court erred by granting summary judgment and awarding attorney’s fees.
 

 DISCUSSION
 

 Summary judgment is appropriate only when the moving party is entitled to judgment as a matter of law, and no genuine issues of fact remain for trial. Shepard v. .Harrison, 100 Nev. 178, 179-
 
 *1435
 
 80, 678 P.2d 670, 672 (1984). The party opposing summary judgment is entitled to have the evidence and all inferences from the evidence accepted as true. Johnson v. Steel, Incorporated, 100 Nev. 181, 182-83, 678 P.2d 676, 677 (1984). However, a trial court may not consider hearsay or other inadmissible evidence when considering summary judgment. Adamson v. Bowker, 85 Nev. 115, 119, 450 P.2d 796, 799 (1969). On appeal, a district court’s order of summary judgment will be reversed if there is the slightest doubt as to the operative facts. Posadas v. City of Reno, 109 Nev. 448, 452, 851 P.2d 438, 442 (1993).
 

 The law of release
 

 At common law, the release of one tortfeasor automatically released all other potential tortfeasors. Dougherty v. California Kettlemen Oil Royalties, 88 P.2d 690, 693 (Cal. 1939). This result was harsh and without any rational basis.
 
 See
 
 Neves v. Potter, 769 P.2d 1047, 1050 (Colo. 1989). Critics urged that “[t]he only desirable rule would seem to be that a plaintiff should never be deprived of a cause of action against any wrongdoer when the plaintiff has neither intentionally surrendered the cause of action nor received substantially full compensation.” W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 49, at 335 (5th ed. 1984).
 

 To avoid the harshness of the common law rule, the Nevada Legislature adopted the Uniform Joint Obligations Act (“UJOA”) as chapter 101 of Nevada Revised Statutes. Whittlesea v. Farmer, 86 Nev. 347, 349, 469 P.2d 57, 58 (1970). In pertinent part, the UJOA states:
 

 If an obligee releasing or discharging an obligor without express reservation of rights against a coobligor, then knows or has reason to know that the obligor released or discharged did not pay so much of the claim as he was bound by his contract or relation with that coobligor to pay,
 
 the obligee’s claim against that coobligor shall be satisfied
 
 to the amount which the obligee knew or had reason to know that the released or discharged obligor was bound to such coobligor to pay.
 

 NRS 101.060(1) (emphasis added).
 

 This rule was drafted to protect the intentions of the parties and to avoid a trap for the unwary. Van Cleave v. Gamboni Construction, 101 Nev. 524, 530, 706 P.2d 845, 849 (1985) (citing
 
 Whittlesea,
 
 86 Nev. at 354, 469 P.2d at 61). Based on the UJOA, courts refuse to allow tortfeasors to escape liability through a
 
 *1436
 
 release executed by an injured party in favor of a joint tortfeasor
 
 unless
 
 the injured party’s intention to release all tortfeasors is manifest.
 
 Whittlesea,
 
 86 Nev. at 353, 469 P.2d at 60-61 (Zenoff, J., concurring).
 

 The Nevada Legislature adopted the Uniform Contribution Among Tortfeasors Act (“UCATA”) in 1973. The UCATA was drafted to specifically address the inequities that resulted from adherence to the traditional common law rule.
 
 Neves,
 
 769 P.2d at 1050. In pertinent part, the UCATA states:
 

 When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury . . . :
 

 1. It does not discharge any of the other tortfeasors from liability for the injury . . .
 
 unless its terms so provide
 
 ....
 

 NRS 17.245 (emphasis added).
 

 The key question in this case is whether the “any and all persons, firms or corporations” language in the release signed by Laura discharged General Motors and Fairway. Jurisdictions that apply the UCATA are divided over how to interpret such language. Some jurisdictions hold that all possible tortfeasors are released by a general, boilerplate release. Douglas v. United States Tobacco Co., 670 F.2d 791, 794-95 (8th Cir. 1982); Newsome v. Finch, 375 So. 2d 1144, 1145 (Fla. Dist. Ct. App. 1979); Ralkey v. Minnesota Mining & Mfg. Co., 492 A.2d 1358, 1363-66 (Md. Ct. Spec. App. 1985). Other jurisdictions narrowly construe the “unless its terms so provide” requirement only to discharge a tortfeaser who is named in the release or identifiable from the face of the release. Moore v. Missouri Pac. R.R., 773 S.W.2d 78, 81 (Ark. 1989); Alsup v. Firestone Tire & Rubber Co., 461 N.E.2d 361, 364 (Ill. 1984); Robertson v. McCarte, 433 N.E.2d 1262, 1264 (Mass. App. Ct. 1982); Beck v. Cianchetti, 439 N.E.2d 417, 420 (Ohio 1982). A third view probes the intentions of the parties by holding that a boilerplate release can only discharge an unnamed tortfeasor if the parties to the release
 
 intended
 
 such a result. McInnis v. Harley-Davidson Motor Co., Inc., 625 F. Supp. 943, 958 (D.R.I. 1986);
 
 Neves,
 
 769 P.2d at 1055; Allen v. Ouachita Marine and Indus. Corp., 606 P.2d 607, 609 (Okla. Ct. App. 1980). The United States Supreme Court has endorsed this latter approach in its review of anti-trust and intellectual property cases.
 
 See
 
 Aro Mfg. Co. v. Convertible Top Co., 377 U.S. 476, 501 (1964); Zenith Radio Corp. v. Hazeltine Research, 401 U.S. 321, 347 (1971).
 

 Our cases that address the issue at bar adhere to the latter view because it is the more reasoned approach.
 
 Compare Neves,
 
 769
 
 *1437
 
 P.2d at 1055. The absolute bar view continues to act as a trap for the unwary, thereby frustrating the intent of the UCATA to abrogate the common law.
 
 See Alsup,
 
 461 N.E.2d at 364. A plaintiff such as Laura would be unfairly barred from pursuing lawsuits against unknown defendants on claims that are legally distinguishable from the claims considered during the negotiation of the release. The view that a release only discharges tortfeasors who are named in a release, or identifiable from the face of a release, is unpersuasive. Such a view renders NRS 17.245 meaningless because before NRS 17.245 was adopted, an express reservation was already required by the UJOA. Further, requiring an express reservation would erroneously render the “any other persons, firms, or corporations” language in a release completely meaningless.
 
 See
 
 Phillips v. Mercer, 94 Nev. 279, 282, 579 P.2d 174, 176 (1978).
 

 Chwialkowski v. Sachs, 108 Nev. 404, 834 P.2d 405 (1992), is the most recent Nevada case dealing with a release of the type presented here. In
 
 Chwialkowski,
 
 the plaintiff was involved in a car accident and sued the other driver, Sachs, after signing a release with the insurance carrier for Sachs’ car. The release expressly stated that it was a
 
 “release and forever discharge
 
 [of] . . .
 
 Paul Cachs
 
 [sic] . . .
 
 and all other persons, firms or corporations
 
 . . . .”
 
 Id.
 
 at 406, 834 P.2d at 405 (emphasis added). Because Sachs was expressly named in the release, interpretation of the “all other persons, firms, or corporations” language was not necessary for resolution of Chwialkowski’s claim.
 

 In two other release cases, Von Zehner v. Truck Ins. Exch., 99 Nev. 152, 659 P.2d 879 (1983), and Igert v. State Farm Mut. Auto. Ins., 91 Nev. 240, 533 P.2d 1365 (1975), we affirmed dismissal orders because each defendant’s liability was discharged by a release. In both
 
 Von Zehner
 
 and
 
 Igert,
 
 the defendants were expressly named in their respective release.
 
 Von Zehner,
 
 99 Nev. at 153-54, 659 P.2d at 881;
 
 Igert,
 
 91 Nev. at 240, 533 P.2d at 1366.
 

 In Van Cleave v. Gamboni Constr., 99 Nev. 544, 665 P.2d 250 (1983) (“Van Cleave I”), we concluded that “absent a statute to the contrary the valid release of one joint tortfeasor releases all joint wrongdoers . . .
 
 .’’Id.
 
 at 546, 665 P.2d at 252. However, in
 
 Van Cleave I
 
 we did not interpret the UCATA because an issue remained as to whether the contract under review was actually a release.
 
 Id.
 
 at 548, 665 P.2d at 253. We considered the same dispute again in Van Cleave v. Gamboni Construction, 101 Nev. 524, 706 P.2d 845 (1985) (“Van Cleave II”). In
 
 Van Cleave II,
 
 we concluded that the UCATA applies in vicarious liability cases because the harsh common law rule of release was abrogated by
 
 *1438
 
 the UCATA.
 
 Id.
 
 at 525, 706 P.2d at 846. We did not consider the specific issue at bar in either
 
 Van Cleave I
 
 or
 
 Van Cleave II.
 
 The release under review in those cases discharged an employee of Gamboni and expressly reserved all claims against
 
 anyone else. Id.
 
 at 526, 706 P.2d at 846. Still, our analysis probed the intention of the releasor. We commented that the record did not indicate that Van Cleave
 
 believed
 
 that she was settling her entire loss and the reservation clause itself indicated she
 
 did not intend
 
 to settle her whole claim.
 
 Id.
 
 at 530, 706 P.2d at 849.
 

 In Hansen v. Collett, 79 Nev. 159, 380 P.2d 301 (1963), we explained that the harsh common law rule of release must yield to “more enlightened” cases that promote the administration of justice.
 
 Id.
 
 at 163, 380 P.2d at 303. We also ratified the views of respectable authorities, both in cases and in the work of eminent text writers, that a release does not, in and of itself, release a party unless it was the intention of the injured person to release that party. Further, we stated that determining an injured party’s intentions depends upon proof and is not susceptible to resolution as a matter of law. Such a determination is appropriately a jury question.
 
 Id.
 

 The meaning of Laura’s release
 

 The Russes presented the Potter declaration as an attachment to their opposition to General Motors and Fairway’s motion for summary judgment. The district court correctly refused to consider certain portions of the declaration based on the ordinary rules of evidence that apply when reviewing a declaration during summary judgment proceedings.
 
 Adamson,
 
 85 Nev. at 119, 450 P.2d at 799; Dredge Corp. v. Husite Co., 78 Nev. 69, 87-88, 369 P.2d 676, 686-87,
 
 cert. denied,
 
 371 U.S. 821 (1962). Despite the declaration’s inadmissible portions, however, it clearly stated that the intent and purpose of Potter, acting as Laura’s agent, was to release only the parties insured by Hawkeye or affiliated with the Haighs. While negotiating the release with Hawkeye, Potter never indicated that a claim was being made, or even contemplated, against General Motors or Fairway.
 

 General Motors and Fairway assert that the Potter declaration as a whole should not be considered because the release was unambiguous, and therefore, parol evidence cannot be considered to determine the meaning of the release. However, parol evidence is allowed to prove mutual mistake, unilateral mistake, or inadequate consideration.
 
 Chwialkowski,
 
 108 Nev. at 406, 834 P.2d at 406. Further, a court should provisionally receive all credible
 
 *1439
 
 evidence concerning a party’s intentions to determine whether the language of a release is reasonably susceptible to the interpretation urged by the party. General Motors Corp. v. Superior Court, 15 Cal. Rptr. 2d 622, 626 (Ct. App. 1993). If the court decides that the extrinsic evidence makes the language in the release reasonably susceptible to the interpretation urged, the extrinsic evidence should be admitted to aid the court’s interpretation of the contract.
 
 Id.
 

 The district court was required to accept the Potter declaration, and any inferences drawn from it, as true during the summary judgment proceeding.
 
 Johnson,
 
 100 Nev. at 182-83, 678 P.2d at 677. The Potter declaration, and the inferences drawn from it, sufficiently raised a genuine issue of fact regarding whether Laura actually released General Motors or Fairway. Accordingly, it was improper for the district court to conclude as a matter of law that Laura intended to discharge substantively different claims against unnamed defendants without considering the evidence of Laura’s intentions. Therefore, we reverse the district court’s summary judgment motion and remand this case for trial.
 
 [1]
 

 The district court’s award of attorney’s fees
 

 The district court awarded General Motors and Fairway attorney’s fees, concluding that the Russes’ complaint was brought without reasonable grounds. As evidenced by our conclusion today, the Russes’ complaint was based upon reasonable grounds. Accordingly, we reverse the district court’s award of attorney’s fees to General Motors and Fairway.
 
 See
 
 Bergmann v. Boyce, 109 Nev. 670, 676, 856 P.2d 560, 564 (1993).
 

 CONCLUSION
 

 We conclude that the intentions of a party signing a general release are relevant and merit consideration when interpreting the scope of a release. Further, we conclude that the Potter declaration provided sufficient competent evidence to raise a genuine issue of fact as to whether Laura intended to release General Motors or Fairway. Accordingly, we hereby reverse the district court’s summary judgment and attorney’s fees orders, and remand this case for trial.
 

 [1]
 

 Because the Russes did not challenge whether a strict liability claim can ever be discharged through a release, our holding today has no bearing on that issue.