STEVEN R. KALDI, Appellant, v. FARMERS INSURANCE EXCHANGE, an Inter–Insurance Exchange; TRUCK INSURANCE EXCHANGE, an Inter–Insurance Exchange; FIRE INSURANCE EXCHANGE, an Inter–Insurance Exchange; MID-CENTURY INSURANCE COMPANY, a Corporation; FARMERS NEW WORLD LIFE INSURANCE CO., a Corporation; FARMERS GROUP, INC., a Corporation; KYLE WOLFF, an Individual; JON PORTER, an Individual; JERRY J. CARNAHAN, an Individual, Respondents.

No. 32620

April 13, 2001

21 P.3d 16

*Edward M. Bernstein & Associates* and *Justin M. Clouser,* Las Vegas; *Perona, Langer, Beck & Lallande* and *Michel F. Mills* and *E. Todd Trumper,* Long Beach, California, for Appellant.

*Rawlings Olson Cannon Gormley & Desruisseaux,* Las Vegas; *Forrest Henderson Sloan & Davis,* Pinedale, California, for Respondents.

Before MAUPIN, C. J., YOUNG and BECKER, JJ.

## OPINION

*Per Curiam:*

The district court dismissed an action brought by appellant, Steven R. Kaldi, against the respondents in this case, Farmers Insurance Exchange, Truck Insurance Exchange, Fire Insurance Exchange, Mid-Century Insurance Company and Farmers New World Life Insurance Company (hereinafter collectively referred

to as "Farmers"). The action concerned Farmers' termination of an exclusive agency agreement with Kaldi.[1] In particular, Kaldi asserted that because Farmers did not have good cause to terminate the agreement, Farmers wrongfully terminated it. Because we conclude that the agency agreement did not contain a "for good cause" provision, we affirm.

## FACTS

On or about February 16, 1981, Kaldi and Farmers entered into a contract entitled "Agent Appointment Agreement" ("Agreement"). The Agreement provided that Kaldi would be authorized to sell insurance on behalf of Farmers and that he would submit requests or applications for insurance to other insurance companies only in areas where Farmers did not provide coverage or had rejected coverage. In return, Farmers would pay "new business and service" commissions to Kaldi and would provide training, forms and advertising assistance to Kaldi's business. The contract also set forth methods of termination and the basis for calculating the value of the agency upon termination. The provisions of the Agreement relevant to this dispute are as follows:

C. This Agreement terminates upon the death of the Agent and may be terminated by either the Agent or the Companies on three (3) months written notice.

If the provisions of this Agreement are breached by either the Agent or the Companies, the Agreement may be terminated by the other party on thirty (30) days written notice. This Agreement may be terminated immediately by mutual consent or by the Companies for the following reasons:

1. Embezzlement of monies belonging to the companies.

2. Switching insurance from the Companies to another carrier.

3. Abandonment of the Agency.

4. Conviction of a felony.

5. Willful misrepresentation that is material to the operation of the agency.

D. In the event this Agreement is terminated by the Companies, the Agent may within ten (10) days of receiv-

---

[1]The claims against the remaining respondents, Farmers Group, Inc., Kyle Wolff, Jon Porter and Jerry J. Carnahan were dismissed because they were deemed derivative of the claims against Farmers.

ing the notice of termination request a review of the termination by a termination review board.

. . . .

The Review Board will convene within twenty (20) days of the request by the Agent at the Regional Office or such other convenient place selected by the Regional Manager.

The Board will submit a summary of the hearing and its recommendations to the Executive Home Office.

The chief executive officer and staff will review the summary and recommendations, reach a decision and promptly advise the Agent of that decision. . . .

. . . .

G. In the event of termination of this Agreement, the Companies will normally pay "Contract Value" to the Agent or heirs in the manner hereinafter set out. If the Companies do not pay the "Contract Value", the Agent or heirs may, in writing, nominate a successor(s). Such nominee(s) must be acceptable to the Companies, and be ready, willing, and able to operate the Agency within thirty (30) days of termination of this Agreement.

H. The Agent agrees to transfer and assign all of the Agent's interest under this Agreement and Agency (including any interest in the telephone numbers and leased or rented office location) to the Companies or any other purchaser in the event they make payment to the Agent pursuant to Paragraph G of this Agreement. . . . The Agent acknowledges that all manuals, lists and records of any kind (including information pertaining to policyholders and expirations) are the confidential property of the Companies and agrees they shall not be used or divulged in any way detrimental to the Companies and shall be returned to the Companies upon termination of the Agency.

I. Nothing contained herein is intended or shall be construed to create the relationship of employer and employee; rather, the Agent is an independent contractor for all purposes.

The time to be expended by the Agent is solely within the Agent's discretion, and the persons to be solicited and the area wherein solicitation shall be conducted is at the election of the Agent.

The Agent shall, as an independent contractor, exercise sole right to determine the time, place and manner in which the objectives of this Agreement are carried out, provided only that the Agent conform to normal good business practice, and to all State and Federal laws governing the conduct of the Companies and their Agents.

On September 23, 1996, Kaldi received written notice of termination pursuant to provision "C" of the Agreement. Kaldi requested a termination review, pursuant to provision "D," which was conducted on December 18, 1996. The Termination Review Board unanimously approved Kaldi's termination. The Agreement was terminated on December 26, 1996, and Kaldi was paid the contract value pursuant to provision "G" of the Agreement.

On July 17, 1997, Kaldi filed a complaint in the Clark County District Court, asserting claims for breach of contract, tort, contractual breach of the implied covenant of good faith and fair dealing and misappropriation of trade secrets. In support of these claims, Kaldi argued that the Agreement could be terminated only for cause and that when the Agreement was wrongfully terminated, he became the owner of all information (trade secrets) pertaining to his customers. In addition, Kaldi alleged that the Agreement in reality created an employer/employee relationship. Kaldi asserted that the conduct and practices of Farmers supported a finding of an implied covenant that the employment relationship would not be terminated without good cause. Finally, Kaldi contended that the Termination Review Board's hearing was a "sham" in violation of the implied covenant of good faith and fair dealing inherent in contractual relations.

Farmers moved to dismiss the complaint, arguing that the Agreement was not an employment agreement, and that it was unambiguous and provided for termination without cause upon three months' written notice. Farmers also asserted that the trade secrets belonged to Farmers once the contract value provided for in the Agreement had been paid to Kaldi. As to its alleged breach of the implied covenant of good faith and fair dealing, Farmers noted that as the Agreement was terminable without cause upon proper notice, there was no breach of the contract and therefore no breach of the implied covenant.

Kaldi countered that the "Termination Review Board" provision was ambiguous and that parol evidence was admissible to aid in the Agreement's interpretation. In this connection, Kaldi argued that the custom and practices of Farmers, together with a document entitled "Agent Appointment Agreement Explainer" ("Explainer"), clarified any ambiguity in favor of a construction that three months' notice terminations were only effective upon a

showing of good cause.[2] In the alternative, Kaldi asserted that the Agreement was not a standard agency agreement, but was an employee/employer agreement and that the complaint contained sufficient allegations to support a claim of an implied good cause provision overcoming the normal at-will presumption applicable to employment contracts in Nevada.

The district court dismissed Kaldi's complaint, finding that the Agreement was an unambiguous agency contract, Kaldi was not an employee of Farmers, and the Agreement was terminable at the will of either party upon appropriate notice. The district court further found that the claims relating to good faith and trade secrets could not be maintained if there was no breach of the Agreement. This appeal followed.[3]

## DISCUSSION

When reviewing an order granting a motion to dismiss, this court "considers whether the challenged pleading sets forth allegations sufficient to establish the elements of a right to relief." *Madera v. SIIS,* 114 Nev. 253, 256, 956 P.2d 117, 119 (1998) (citing *Pemberton v. Farmers Ins. Exchange,* 109 Nev. 782, 792, 858 P.2d 380, 381 (1993)). In doing so, we are "bound to accept all the factual allegations in the complaint as true." *Marcoz v. Summa Corporation,* 106 Nev. 737, 739, 801 P.2d 1346, 1347 (1990) (citing *Edgar v. Wagner,* 101 Nev. 226, 227-28, 699 P.2d 110, 111-12 (1985)).

Kaldi contends that his exclusive agency arrangement with Farmers created an employer-employee relationship between himself and the companies. The plain language of the Agreement does not support Kaldi's assertion. "It has long been the policy in Nevada that absent some countervailing reason, contracts will be construed from the written language and enforced as written." *Ellison v. C.S.A.A.,* 106 Nev. 601, 603, 797 P.2d 975, 977 (1990) (citing *Southern Trust v. K & B Door Co.,* 104 Nev. 564, 568, 763 P.2d 353, 355 (1988) (holding that if a document is facially

[2]Three exhibits were attached to the complaint. Exhibit A was the Agent Appointment Agreement. Exhibit B was entitled "Agent Appointment Agreement Explainer" and Exhibit C was a document from an unrelated proceeding wherein Farmers discussed the ownership of an agent's "book," the term used for the trade secrets related to an agent's business.

[3]The district court did not specifically address Kaldi's claim that the termination review hearing was improperly conducted. A finding that this claim lacked merit is implied however from the order dismissing the entire complaint. *See Hardy v. First Nat'l Bank of Nev.,* 86 Nev. 921, 478 P.2d 581 (1970). Kaldi does not raise the issue on appeal.

clear, it will be construed according to its language)). Here, provision "I" of the agreement specifically states that Kaldi is not an employee of Farmers and that nothing in the Agreement is intended to create an employee/employer relationship. Additionally, under the Agreement, Kaldi was responsible for maintaining his own offices, supervising his employees, determining the hours of operation for the business, providing supplies, etc. As the Agreement unambiguously provides that Kaldi was an independent contractor, not an employee, we reject his argument that it created an employment relationship.[4]

*Contract interpretation*

Kaldi contends that it was error for the district court to dismiss his cause of action for breach of contract because the Agreement expressly required Farmers to establish good cause before terminating his agency. Kaldi alleges that the presence of provision "D," which provides for review of a termination by a review board, and the absence of an "at-will" provision, create a contractual obligation to allow termination of the Agreement for good cause only. We disagree.

Absent a contractual provision to the contrary, an independent contractor/principal agency relationship is terminable at any time at the will of the principal or the agent. *See generally Restatement (Second) of Agency* § 117 cmt. a (1958). Moreover, in Nevada, an insurer may, subject to an agent's contract rights, terminate an agent's appointment at any time. NRS 683A.290(1). The Agreement creates an independent contractor agency relationship. Therefore, subject to the language of the Agreement, the agency relationship between Farmers as principal and Kaldi as agent was terminable at any time without cause provided three months' advance written notice was given.

Provision "C" of the Agreement contains contractual language that modifies the common law and statutory right of the parties to terminate the agency relationship at will. This language, however, deals with the type of notice required before a termination becomes effective. The Agreement specifies that termination without advance written notice can only occur when the agent commits certain wrongful acts, such as embezzlement. In all other

---

[4]Because we conclude that Kaldi is not an employee of Farmers, we do not address his arguments based upon an implied-in-fact covenant of continued employment under *D'Angelo v. Gardner,* 107 Nev. 704, 819 P.2d 206 (1991). We also reject Kaldi's arguments that he should be treated as an "employee" or "quasi-employee" and decline to apply *D'Angelo* to the facts of this case.

cases, one party must give the other either three months' or thirty days' advance written notice of termination of the relationship, depending upon the circumstances. Thus, the agent's conduct is only a factor as to the nature of the notice which is required before the principal can terminate the agency. The contractual provisions do not limit the principal's right to terminate the agency without cause. Provision ''C'' is clear on its face and must be interpreted as written; it does not require Farmers to have good cause before terminating the agency relationship.

Kaldi does not contest that the language of provision ''C'' is not clear on its face. Instead, Kaldi argues that provision ''C'' is modified by provision ''D'' of the Agreement. Provision ''D'' provides that ''[i]n the event this Agreement is terminated by the Companies, the Agent may within ten (10) days of receiving the notice of termination request a review of the termination by a termination review board.'' Kaldi contends that this provision can be reasonably interpreted to require a showing of good cause prior to termination because a review by the Board would be meaningless in the case of a termination without cause.

While provision ''D'' unambiguously provides for a review of the agent's termination, it does not indicate that the review is to establish the existence or absence of good cause. It merely provides a forum for arguing that the decision to end the agency relationship should be reconsidered. The ultimate decision on whether or not to terminate the agency still resides within the discretion of the principal. Provision ''D'' cannot be reasonably read to require Farmers to establish good cause before terminating the Agreement.

This interpretation does not, as asserted by Kaldi, lead to an absurd result or render meaningless the language of provision ''D.'' Kaldi contends that the only logical reason for a review is to determine if there is good cause to terminate the agent. However, there are many reasons why a principal may wish to terminate an agency relationship that have nothing to do with wrongful conduct on the part of the agent. For example, there may be too many agents in a given geographical area and the principal may simply have chosen to reduce the agency pool.

The review board process gives the agent the opportunity to assert that it is not in the best interest of Farmers to sever the agency relationship. It also gives the agent, in appropriate circumstances, a forum in which to argue that the termination was the product of bias or prejudice on the part of the person who made the initial decision to terminate the relationship. That is, the termination was not made to further the interests of Farmers, but the interests of the executive who made the decision. Thus, even without a requirement of cause, the review board serves a viable purpose under the contract.

We are not free to modify or vary the terms of an unambiguous agreement. *State ex rel. List v. Courtesy Motors,* 95 Nev. 103, 107, 590 P.2d 163, 165 (1979). Provision "D" is not ambiguous. On its face, it does not require the Termination Review Board to make any findings with respect to good cause before sustaining a termination and it must be construed and enforced as written. *Ellison,* 106 Nev. at 603, 797 P.2d at 977.

### Parol evidence rule

Kaldi next contends that since provision "D" does not specify a standard for the review process, this is an ambiguity that would permit Kaldi to introduce parol evidence to clarify the standard of review. In the alternative, Kaldi asserts the Agreement is silent on the issue of termination for cause and that it does not contain an "at-will" provision. Because of this "silence," Kaldi argues the Agreement is ambiguous, allowing for the admission of parol evidence. Kaldi contends that a second document, the Explainer attached to the complaint, provides the clarification necessary to resolve any ambiguity.[5]

Generally, parol evidence may not be used to contradict the terms of a written contractual agreement. "The parol evidence rule forbids the reception of evidence which would vary or contradict the contract, since all prior negotiations and agreements are deemed to have been merged therein." *Daly v. Del E. Webb Corp.,* 96 Nev. 359, 361, 609 P.2d 319, 320 (1980). Where "a written contract is clear and unambiguous on its face, extraneous evidence cannot be introduced to explain its meaning." *Geo. B. Smith Chemical v. Simon,* 92 Nev. 580, 582, 555 P.2d 216, 216 (1976).

Kaldi contends that the Explainer is admissible to demonstrate that, although the Agreement may appear to be unambiguous, it is susceptible to more than one reasonable interpretation. Kaldi relies upon this court's statement in *Russ v. General Motors Corp.,* 111 Nev. 1431, 906 P.2d 718 (1995). In dictum, *Russ* stated that "a court should provisionally receive all credible evidence concerning a party's intentions to determine whether the language of a release is reasonably susceptible to the interpretation urged by the party." *Id.* at 1438-39, 906 P.2d at 723 (citing

---

[5]Kaldi does not argue, nor does the complaint state, that the Explainer is a part of the Agreement and therefore a part of the agency contract. The complaint and the briefs allege that the Explainer is a separate document subject to the parol evidence rule.

*General Motors Corp. v. Superior Court,* 15 Cal. Rptr. 2d. 622, 626 (Ct. App. 1993)). "If the court decides that the extrinsic evidence makes the language in the release reasonably susceptible to the interpretation urged, the extrinsic evidence should be admitted to aid the court's interpretation of the contract." *Id.* at 1439, 906 P.2d at 723 (citing *General Motors Corp.,* 15 Cal. Rptr. 2d. at 626).

As dictum, *Russ* is not controlling. Moreover, the California opinion cited in *Russ* does not stand for a general proposition that evidence of a party's intent may be admissible to create ambiguity in an otherwise unambiguous written contract. To do so would be to eviscerate the parol evidence rule. The California rule permits provisional receipt of parol evidence to demonstrate that a particular phrase or term in a document, that has a common meaning, was not intended by the parties to have its common meaning. The rule was developed to avoid problems when a judge is unaware of the possibility that the phrase or term might have a special meaning not apparent on the face of the document. For example, thirty days usually means thirty calendar days, but it can also mean thirty business days. In such instances, parol evidence may be admissible to demonstrate the parties' understanding of a particular term. *See Bionghi v. Metropolitan Water District,* 83 Cal. Rptr. 2d 388 (Ct. App. 1999); *Pacific Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.,* 442 P.2d 641 (Cal. 1968).

Although Kaldi contends that the language establishing the termination review procedures falls within this exception to the parol evidence rule, this exception was never intended to allow parol evidence to substitute for the language of a complete section of an agreement such as provision "D."

Kaldi's second contention regarding ambiguity involves the Agreement's failure to state that it is an "at-will" agreement as well as the Agreement's silence regarding the issue of termination for cause. Kaldi argues that this "silence" allows for the admission of the Explainer, or other evidence of the parties' intentions.

Kaldi relies heavily on *Wallis v. Farmers Group, Inc.,* 269 Cal. Rptr. 299 (Ct. App. 1990). In *Wallis,* the California Court of Appeals considered the same agreement that is the subject of this dispute. The *Wallis* court, citing to *Masterson v. Sine,* 436 P.2d 561 (Cal. 1968), concluded that the termination provisions of the agent appointment agreement were a fully integrated component of the contract and that extrinsic evidence could not be used to supplement the agreement. However, the *Wallis* court then stated that, as the agreement was silent on the issue of good cause, it was susceptible to more than one meaning and extrinsic evidence of oral or implied-in-fact agreements was admissible to ascertain the meaning of the termination provisions within the agreement. *Wallis,* 269 Cal. Rptr. at 305.

The *Wallis* rationale is not persuasive, particularly in light of the common law right to terminate an agency at will and the provisions of NRS 683A.290(1). NRS 683A.290(1) states that "[s]ubject to an agent's contract rights, if any, an insurer may terminate the agent's appointment, resident or nonresident, at any time." Under Nevada statutory law, an insurance agency contract is terminable at will unless the contract specifically contains language to the contrary. Silence on this issue within a written contract cannot create an ambiguity. Moreover, we agree with the *Bionghi* court that the *Wallis* court's treatment of the parol evidence rule is inconsistent with *Pacific Gas* and *Masterson*. *Bionghi,* 83 Cal. Rptr. 2d at 394.

We recognize that Nevada law does allow for the admission of extrinsic oral agreements under certain circumstances. " '[T]he existence of a separate oral agreement as to any matter on which a written contract is silent, and which is not inconsistent with its terms, may be proven by parol.' " *Crow-Spieker #23 v. Robinson,* 97 Nev. 302, 305, 629 P.2d 1198, 1199 (1981) (quoting *Alexander v. Simmons,* 90 Nev. 23, 24, 518 P.2d 160, 161 (1974)). Here, however, the complaint does not allege that Kaldi and Farmers entered into a separate oral contract regarding termination procedures. In fact, provision "J" of the Agreement specifically prohibits separate oral contracts and requires that all changes, alterations or modifications to the Agreement be in writing and signed by all parties. The complaint only alleges the existence of the Explainer and that Farmers had expressly, or by implication, promised that any termination of the Agreement would be based on good cause. Thus, the facts of this case do not fall within the exception to the parol evidence rule set forth in *Crow-Spieker* and *Alexander*.

Having determined that the parol evidence allegations contained in the complaint cannot be used to supercede the express unambiguous provisions of the Agreement, we conclude that the district court did not err in dismissing Kaldi's breach of contract claim.

## Misappropriation of trade secrets

Kaldi contends that the district court erred by dismissing his claim that Farmers misappropriated his trade secrets by divulging information to other agents who used the information to gain a competitive advantage. We disagree.

Generally, the elements required for pleading a cause of action for misappropriation of trade secrets include:

(1) a valuable trade secret; (2) misappropriation of the trade secret through use, disclosure, or nondisclosure of use of the trade secret; and (3) the requirement that the misappropriation be wrongful because it was made in breach of an express or implied contract or by a party with a duty not to disclose.

*Frantz v. Johnson,* 116 Nev. 455, 466, 999 P.2d 351, 358 (2000).

Provision "H" of the Agreement states, in part, that:

The Agent acknowledges that all manuals, lists and records of any kind (including information pertaining to policyholders and expirations) are the *confidential property* of the Companies and agrees they shall not be used or divulged in any way detrimental to the Companies and shall be returned to the Companies upon termination of the Agency.

(Emphasis added.) Provision "H" plainly establishes that the customer information was, at all relevant times, Farmers' property. The Agreement in this regard is clear on its face and must be "construed from the written language and enforced as written." *Ellison,* 106 Nev. at 603, 797 P.2d at 977.

Kaldi alleges, however, that if Farmers breaches the Agreement, the agent is no longer bound by provision "H" and the "book of business" belongs to the agent. Since we have concluded, based on the allegations contained in the complaint, that the district court properly concluded that Farmers did not breach the Agreement, Kaldi's assertion of ownership of the trade secrets cannot be sustained on that ground.

Kaldi also contends that the trade secrets or "book of business" belong to him because, under the contract, he is an independent contractor who has developed the trade secrets. Kaldi asserts that Farmers has used this claim in other proceedings to support its argument that it is not an employer subject to labor relations laws, and he attached documentation to the complaint in support of that assertion. Assuming such extrinsic evidence would be admissible, the evidence merely indicates that where an agent rejects the payment of "Contract Value" upon the termination of a contract, then the agent may have a claim upon the "book of business." No such factual allegations are contained in the complaint, and accordingly, we conclude that the district court did not err in dismissing Kaldi's action for misappropriation of trade secrets.

## CONCLUSION

Having considered the issues presented on appeal, we conclude that Kaldi failed to set forth allegations sufficient to establish the

elements of a right to relief in his complaint. Therefore, we discern no error in the district court's dismissal of Kaldi's complaint and affirm the district court's order.