CAROLYN Y. MANN, Appellant, v. FARMERS
INSURANCE EXCHANGE, Respondent.

No. 22609

August 20, 1992                    836 P.2d 620

*Brent E. Leavitt,* Las Vegas, for Appellant.

*Cobb, Gugino & Williamson,* Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

Appellant, Carolyn Mann, was injured in a two-car accident; the other car was driven by a Las Vegas Metropolitan Police Officer. At the time of the accident, Mann was insured with respondent Farmers Insurance Exchange. Pursuant to a relevant Nevada statute, Mann could recover a maximum payment of $50,000.00 from the police officer/department.

Mann settled with the police officer/department for $35,000.00 and executed a release. Thereafter, she submitted a demand and proof of loss to Farmers in an attempt to recover underinsured

motorist benefits. Farmers did not respond to this demand. Mann then filed a complaint against Farmers, stating that her damages exceeded the $50,000.00 statutory cap and that Farmers had, in bad faith, ignored her demand. In response to this complaint, Farmers filed a motion to dismiss; in this motion, Farmers contended that Mann, under the provisions of her policy, was required to exhaust the liability limit of the police officer/department's insurance before she could pursue underinsured motorist benefits. Farmers asserted that since Mann had settled for less than the liability limit, she was not entitled to underinsured motorist benefits. The district court granted Farmers' motion to dismiss.

On appeal, Mann argues that the district court erred in dismissing her complaint because her policy's exhaustion clause violates public policy.[1] We agree. According to the terms of Mann's insurance policy, Mann is required to exhaust the liability limits of any applicable bonds or policies before Farmers will pay underinsured motorist benefits. Specifically, Mann's "E-Z-Reader" policy provides as follows:

> Coverage C—Uninsured Motorist Coverage
> (Including Underinsured Motorist Coverage)
> We will pay all sums which an insured person is legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by the insured person.
>
> . . . .
> Other Insurance
> 1. We will pay under this coverage only after the limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payments of judgments or settlements.
> 2. The amount of Uninsured Motorist Coverage we will

---

[1]Mann also argues that the policy language is vague because it does not specifically state that Mann must first exhaust the liability policy of the person at fault and does not clearly reference the statutory caps for self-insured governmental entities that were involved in her case. We conclude, however, that the policy provisions at issue are sufficiently clear. "Insurance policy clauses should be understood in their plain, ordinary and popular sense." Keener v. C.S.A.A., 107 Nev. 504, 506, 814 P.2d 87, 88 (1991) (citation omitted). In the present case, Mann's policy unambiguously requires her to exhaust the limits of *any* applicable bodily injury liability bonds or policies. In addition, although the policy does not specifically reference legislative caps for self-insured entities, we conclude that these caps are analogous to policy limits for policy holders and do not create an ambiguity.

pay . . . shall be to the extent the damages exceed the amount of any other bodily injury coverage available to any party held to be liable for the accident.

Cases from other jurisdictions have held that "exhaustion" clauses violate public policy because they unnecessarily promote litigation costs, increase the number of trials, and unreasonably delay the recovery of underinsured motorist benefits. Specifically, these cases point out that an insured may have valid reasons for accepting less than the tortfeasor's policy limit, that an "underinsured motorist carrier" can compute its payments to the insured as if the insured *had* exhausted the tortfeasor's policy limit, and that if an "exhaustion clause" is in effect, the tortfeasor's carrier can force the plaintiff to go to trial by offering less than the tortfeasor's policy limit, thereby greatly increasing litigation costs and expenses and promoting delay. *See* Mulholland v. State Farm Mutual Auto Ins. Co., 527 N.E.2d 29 (Ill.App.Ct. 1988); Schmidt v. Clothier, 338 N.W.2d 256 (Minn. 1983) (superseded by statute); Longworth v. Van Houten, 538 A.2d 414 (N.J.Super.Ct.App.Div. 1988); Hamilton v. Farmers Ins. Co. of Washington, 733 P.2d 213 (Wash. 1987).

We conclude that the exhaustion clause in Mann's insurance policy violates public policy. The Nevada Legislature intended that uninsured and underinsured motorist benefits be available to Nevada citizens. *See* NRS 687B.145(2). The damaged insured is placed in a difficult situation if he or she must forego all settlement offers and go to trial in order to obtain (or attempt to obtain) compensation up to the tortfeasor's policy limit—just to qualify for underinsured benefits under his or her own policy. For instance, if an insured covered by a policy like Mann's were involved in an accident with three other drivers, each of whom was responsible for the accident to a different extent, the insured would have to exhaust the liability limits of *each* tortfeasor's policy before pursuing underinsured motorist benefits. Thus, in this example, even if one of the drivers was only ten percent at fault, the insured could not settle with this driver for less than his or her policy limit without giving up underinsured motorist benefits.

Additionally, if a tortfeasor offers the insured, in good faith, an amount less than the tortfeasor's policy limit, and the insured has suffered injuries exceeding the tortfeasor's policy limit, the insured cannot accept this offer, even if it is close to the tortfeasor's policy limit, unless the insured is willing to forego underinsured motorist benefits. Instead, the insured is forced to go to trial, and costs are added while payment is delayed. Further, although the underinsured motorist coverage provider, as a provider of excess coverage, should not have to duplicate benefits

that should have been covered by the tortfeasor's insurer, an underinsured motorist coverage provider should only pay for whatever damages the insured suffered *beyond* the tortfeasor's policy limit.

Farmers asserts that if this court does conclude that the exhaustion clause violates public policy, then Mann's underinsured motorist coverage is limited to $15,000.00. Farmers relies on Zobrist v. Farmers Ins. Exchange, 103 Nev. 104, 734, P.2d 699 (1987). Our holding in *Zobrist* is completely inapplicable, however, as *Zobrist* involved an *exclusion* clause, and in this case, Farmers is attempting to enforce an exhaustion clause, a condition precedent to coverage. As we conclude that this condition precedent violates Nevada's public policy, Mann should be able to recover an amount restricted only by her coverage limit for underinsured motorist—$100,000.00.

Farmers also asserts that Mann forfeited her right to underinsured motorist benefits when she settled her claim and executed a release. Farmers had prior notice of the settlement and release, however, and an insurance carrier cannot deny underinsured motorist benefits if the insured has notified its carrier of the proposed settlement. *See, e.g.,* Lambert v. State Farm Mut. Auto. Ins. Co., 576 So.2d 160 (Ala. 1991); Huth v. Nationwide Ins. Co., 560 N.Y.S.2d 724 (N.Y.Sup.Ct. 1990); McDonald v. Republic-Franklin Ins. Co., 543 N.E.2d 456 (Ohio 1989); Hamilton v. Farmers Ins. Co. of Washington, 733 P.2d 213 (Wash. 1987). Accordingly, Farmers cannot deny underinsured motorist benefits to Mann simply because she settled and executed a release.

For the reasons stated above, we reverse the district court order dismissing Mann's complaint and remand this case for further proceedings consistent with this opinion.