**STATE FARM FIRE AND CASUALTY COMPANY, Plaintiff–Appellee,**

v.

**Raymond F. OTTO, and Betty J. Otto, Defendants–Appellants.**

No. 95–16605.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 10, 1996.

Decided Feb. 6, 1997.

James R. Cox, Las Vegas, Nevada, for the defendants-appellants.

John P. Skalak, Pearson and Patton, Las Vegas, Nevada, for the plaintiff-appellee.

Before: FLETCHER, WIGGINS, and T.G. NELSON, Circuit Judges.

T.G. NELSON, Circuit Judge:

Raymond and Betty Otto, purchasers of a Personal Liability Umbrella Policy (umbrella), appeal the district court's entry of summary judgment in a declaratory judgment action filed by State Farm Fire and Casualty Company (State Farm Fire).

The Ottos contend that the district court misapplied Nevada law when it declared that they could not pursue a separate uninsured motorist claim under an umbrella policy with State Farm Fire, because they signed a "general" release at the time of settling an uninsured motorist claim with their primary auto insurer, State Farm Mutual Automobile Insurance Company (State Farm Auto). We have jurisdiction and we reverse and remand with instructions for the district court to enter judgment allowing the Ottos to pursue a claim under their umbrella policy.

## FACTS AND PRIOR PROCEEDINGS

While unloading some items, Raymond Otto was struck and thrown from the impact of his own car door when another vehicle forcefully backed into the front of his car. Because he was unable to collect from the bankrupt insurance company of the driver at fault, Otto presented an uninsured motorist

claim to his own auto insurance carrier, State Farm Auto. The Ottos' uninsured motorist coverage through State Farm Auto included a bodily injury policy limit of $100,000 per person.

Ultimately, the Ottos settled their uninsured motorist claim with State Farm Auto for $85,000. At the time of settling with State Farm Auto, the Ottos signed a document entitled "FULL, FINAL AND GENERAL RELEASE OF ALL CLAIMS, CONTRACTUAL, EXTRACONTRACTUAL, AND/OR ANY OTHER KIND WHATSOEVER," which, in pertinent part, read:

> FOR THE CONSIDERATION [of $85,000], the undersigned Claimants, RAYMOND F. OTTO, SR. and BETTY J. OTTO, individually, as husband and wife, and for their representatives, agents, assigns and future heirs, do hereby fully and forever release, acquit and discharge in this full, final and general release, any and all claims (contractual, extracontractual, tort or any other kind whatsoever) against STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY ("STATE FARM AUTO") and its agents, employees, assigns, representatives, insureds, insurers, independent contractors *and all other persons, corporate, partnership or individual*, with respect to any and all claims, causes of action, litigation, or potential claims, rights, costs, expenses, demands for compensation or litigation arising out of that certain automobile accident or incident that occurred on or about July 9, 1991, at approximately 7:05 a.m. at 3375 Pinks Place, Las Vegas, Nevada. . . .

(Emphasis added).

In addition to the uninsured motorist coverage contained in the auto policy issued through State Farm Auto, the Ottos also had purchased uninsured motorist coverage in an umbrella policy issued through State Farm Fire. As a condition of coverage under the uninsured motorist provision of the umbrella policy, the Ottos were required to have "Underlying Insurance Coverage" with a bodily injury policy limit of $100,000 per person. The Ottos' policy with State Farm Auto satisfied this requirement.

After settling their claim with State Farm Auto, the Ottos then filed a claim under the terms of their umbrella policy with State Farm Fire. Initially, the Ottos were asked to withdraw their claim to avoid the filing of a declaratory judgment action. When the Ottos refused, State Farm Fire filed this action.

Upon considering cross-motions for summary judgment,[1] the district court entered judgment in favor of State Farm Fire and declared: (1) that the release agreement with State Farm Auto unambiguously referred to "all other persons, corporate, partnership or individual," and therefore it did not matter if the Ottos did not intend State Farm Fire to be a beneficiary of the release; and (2) that because the release did not contain limiting language restricting its effect, the consideration paid by State Farm Auto served as adequate consideration for State Farm Fire's release under the agreement.

On appeal, the Ottos essentially contend that the district court misapplied Nevada law when it failed to consider evidence which demonstrated that they did not intend to release State Farm Fire from uninsured motorist liability under their umbrella policy when they settled their uninsured motorist claim with State Farm Auto.

In response, State Farm Fire contends that it is entitled to summary judgment for the reasons stated by the district court, or on the separate and independent ground that the Ottos are precluded from pursuing a claim under their umbrella policy because they did not "exhaust" their underlying uninsured motorist insurance with State Farm Auto (i.e., because they settled for $85,000, as opposed to the $100,000 policy limit).

## STANDARD OF REVIEW

A grant of summary judgment is reviewed *de novo*. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir.1996). The appellate court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court

---

1. When the district court addressed State Farm Fire's motion for summary judgment, it properly construed the Ottos' motion to dismiss as a motion for summary judgment.

correctly applied the relevant substantive law. *Id.*

## DISCUSSION

### I. *"General" Releases under Nevada Law*

#### A. *The significance of the releasor's intent.*

■ During the pendency of this appeal, the Nevada Supreme Court reversed a district court decision which held that "the words contained in [a general] release were clear and unambiguous, [and stated] that the class of released entities defined in the release included not only [unnamed parties whom the plaintiff wanted to sue] but all other firms and corporations." *Russ v. General Motors Corp.*, 111 Nev. 1431, 906 P.2d 718, 720 (1995).

The *Russ* decision acknowledged that jurisdictions are divided over how to interpret releases which refer to "any and all persons, firms or corporations," *id.* 906 P.2d at 721, but ultimately concluded that Nevada cases adhere to "the more reasoned approach" which "probes the intentions of the parties by holding that a boilerplate release can only discharge an unnamed tortfeasor if the parties to the release intended such a result." *Id.* (citations omitted).

Although *Russ* dealt with whether a plaintiff intended to release "an unnamed tortfeasor," the reasoning in that case, as well as *prior* Nevada cases, logically required the district court to "probe" whether the Ottos intended to release the "unnamed" insurance company, State Farm Fire, when they signed the release with State Farm Auto. Going back more than thirty years, the Nevada Supreme Court noted that:

> In *Hansen v. Collett*, 79 Nev. 159, 380 P.2d 301 (1963), we explained that the harsh common law rule of release must yield to "more enlightened" cases that promote the administration of justice. We also ratified the views of respectable authorities, both in cases and in the work of eminent text writers, that a release does not, in and of itself, release a party unless it was the intention of the injured person to release that party.

*Russ*, 906 P.2d at 722 (citations omitted).

■ Thus, in Nevada, "the intentions of a party signing a general release are relevant and merit consideration when interpreting the scope of a release," and therefore, "it was improper for the district court to conclude as a matter of law that [the Ottos] intended to discharge [State Farm Fire] without considering the evidence of [the Ottos'] intentions." *Id.* at 723.

#### B. *The district court's failure to consider the Ottos' intent.*

In support of its decision in favor of State Farm Fire, the district court relied solely on the unambiguous wording of the general release and the case of *Chwialkowski v. Sachs*, 108 Nev. 404, 834 P.2d 405 (1992), which is distinguishable from the Ottos' case for at least three reasons.

First, unlike the party in *Chwialkowski*, the Ottos do not want to "rescind" the release as to a party. On the contrary, the Ottos take the position that State Farm Fire was not a party to the release.

Second, as the court in *Russ* specifically pointed out, although *Chwialkowski* involved a "general release" it is not helpful to a case, such as the Ottos', in which an injured party wishes to pursue a claim against a party that is *not* expressly named in the release. In *Chwialkowski*, the general release expressly included—although misspelled—the name of the party the plaintiff wanted to sue, and therefore, "interpretation of the 'all other persons, firms, or corporations' language was not necessary for resolution of Chwialkowski's claim." *Russ*, 906 P.2d at 722.

■ And, third, the party who signed the release in *Chwialkowski* "did not present *any* evidence to demonstrate that the consideration supported only the release of [the driver's insurance carrier]" as opposed to the driver himself. *Chwialkowski*, 834 P.2d at 406 (emphasis added). In contrast, there is much undisputed evidence in this record which conclusively demonstrates that the Ottos did not intend to release State Farm Fire, that State Farm Auto knew the Ottos did not intend to release State Farm Fire, and that no part of the $85,000 settlement could be classified as consideration for the release of State Farm Fire.

For instance, State Farm Auto was aware the Ottos wanted to file a claim under their umbrella policy as early as their demand

letter, which was sent more than seven months before the release was signed. Then, upon receiving an initial version of the release from State Farm Auto, the Ottos' attorney sent a letter explicitly requesting the deletion of all references to State Farm Fire and the Ottos' umbrella policy. In response to that request, State Farm Auto sent a letter dated July 9, 1993, which stated:

> We agree to accept your requested changes and will revise the release accordingly. Whether or not you previously were aware that your client had an umbrella policy, you must now realize that any coverage contained in that policy is not available to Mr. Otto since his umbrella coverage is excess coverage only and Mr. Otto's claim does not exceed the underlying policy coverage from his State Farm Auto policy. Although we originally included this reference and the reference to other possible State Farm policies in our release in order to be thorough, the references are not specifically necessary to release all claims in this case, and the references will therefore be removed pursuant to your request.[2]

The content of the various letters, the events which led up to the final draft of the release, and the affidavits of Betty Otto and Raymond Otto collectively provide unequivocal evidence of the Ottos' intent not to release State Farm Fire when they settled their uninsured motorist claim with State Farm Auto. The district court did not consider this evidence, nor did it consider the unequivocal evidence that State Farm Auto *knew* the Ottos did not intend to release State Farm Fire—particularly since they insisted that any reference to State Farm Fire be deleted from the release.

### C. *The Ottos' entitlement to judgment as a matter of law.*

■ Some cases of this nature might create a genuine issue of fact resulting in the need for a trial. However, where, as here, the "evidence ... is so one-sided that one party must prevail as a matter of law," a trial

is unnecessary. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Based on the undisputed record which conclusively establishes the Ottos' intent, together with the relevant substantive law from Nevada, no reasonable jury could return a verdict in favor of State Farm Fire. Therefore, the decision of the district court shall be reversed and this case shall be remanded with instructions for the district court to enter a judgment allowing the Ottos to pursue a claim under their umbrella policy. *Cf. Columbia Grain, Inc. v. Oregon Ins. Guar. Ass'n*, 22 F.3d 928 (9th Cir.1994) (where there were no disputed issues of fact, and the only question was whether the district court properly interpreted state law, case remanded with instructions that summary judgment be entered for appellants).

### II. *Uninsured Motorist Coverage and "Exhaustion" under Nevada Law*

■ As an alternative argument on appeal, State Farm Fire takes the position that the Ottos were required to settle their claim with State Farm Auto for the full $100,000 policy limit before they could present a claim for excess uninsured motorist coverage under their umbrella policy.

We are somewhat surprised that State Farm Fire chose to take this position before the district court, and then to reassert it on appeal. Not only do the terms of the Ottos' umbrella policy fail to mention any "exhaustion" requirement whatsoever, but more than a year prior to the filing of this action, the Nevada Supreme Court decided *Mann v. Farmers Ins. Exchange*, 108 Nev. 648, 836 P.2d 620 (1992), which held that an exhaustion clause in an uninsured motorist policy "violates public policy," and explained that:

> Cases from other jurisdictions have held that "exhaustion" clauses violate public policy because they unnecessarily promote litigation costs, increase the number of trials, and unreasonably delay the recovery of underinsured motorist benefits. Specifically, these cases point out that an insured

---

2. Apparently, State Farm Auto was willing to delete any reference to State Farm Fire based on the mistaken belief that, under an umbrella policy for uninsured motorist coverage, "an exhaus-

tion requirement" would be inferred, much less permitted, under Nevada law. We discuss the "exhaustion" issue in section II of this Opinion.

may have valid reasons for accepting less than the tortfeasor's policy limit, that an "underinsured motorist carrier" can compute its payments to the insured as if the insured *had* exhausted the tortfeasor's policy limit, and that if an "exhaustion clause" is in effect, the tortfeasor's carrier can force the plaintiff to go to trial by offering less than the tortfeasor's policy limit, thereby greatly increasing litigation costs and expenses and promoting delay.

*Id.* 836 P.2d at 621.

Moreover, the court noted that the "Nevada Legislature intended that uninsured and underinsured motorist benefits be available to Nevada citizens," and recognized that when an insurance company attempts to enforce an exhaustion clause as a condition precedent to coverage: "The damaged insured is placed in a difficult situation if he or she must forego all settlement offers and go to trial in order to obtain (or attempt to obtain) compensation up to the tortfeasor's policy limit—just to qualify for underinsured benefits under his or her own policy." *Id.*

Shortly after deciding *Mann*, the Nevada Supreme Court struck down another exhaustion clause in an uninsured/underinsured motorist policy and agreed with the following analysis from the Third Circuit: "[W]e do not perceive how, in most cases, underinsured endorsement carriers actually will be prejudiced if they receive credit for the full limits of the tortfeasor's policy." *Shaw v. Continental Ins. Co.*, 108 Nev. 928, 840 P.2d 592, 594 (1992) (*quoting Aetna Cas. & Sur. Co. v. Farrell*, 855 F.2d 146, 150 (3d Cir. 1988)).

Consistent with the reasoning contained in *Mann* and *Shaw*, the record establishes that the Ottos had legitimate reason to settle with State Farm Auto for less than the applicable $100,000 policy limit. Subsequent to that settlement, under Nevada law the Ottos were fully entitled to submit an uninsured motorist claim under their umbrella policy with State Farm Fire, but, as they themselves concede, State Farm Fire can only be held liable for damages in excess of the $100,000 auto policy limit—as opposed to damages in excess of the $85,000 settlement.

**3.** In the event the Ottos are ultimately awarded attorney's fees for their efforts in this litigation, the district court shall include in the award a

## CONCLUSION

Based on the undisputed record and the relevant substantive law from the State of Nevada, we reverse the decision of the district court and remand for the entry of a judgment which allows the Ottos to pursue an uninsured motorist claim under their State Farm Fire umbrella policy.

REVERSED AND REMANDED. Costs to Appellants.[3]

reasonable amount for attorney's fees on this appeal.