YELLOW CAB OF RENO, INC., PETITIONER, *v.* THE SECOND JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF WASHOE; AND THE HONORABLE JANET J. BERRY, DISTRICT JUDGE, RESPONDENTS, AND KELLY ENCOE; AND GRANITE CONSTRUCTION, REAL PARTIES IN INTEREST.

No. 56435

August 4, 2011                      262 P.3d 699

---

*Law Offices of Steven F. Bus, Ltd.*, and *Steven F. Bus*, Reno, for Petitioner.

*Peter Chase Neumann*, Reno, for Real Party in Interest Kelly Encoe.

*Erickson, Thorpe & Swainston, Ltd.*, and *John C. Boyden* and *Charity F. Felts*, Reno, for Real Party in Interest Granite Construction.

*Catherine Cortez Masto*, Attorney General, *David W. Newton*, Senior Deputy Attorney General, and *Scott R. Davis*, Deputy Attorney General, Carson City, for Amici Curiae.

Before DOUGLAS, C.J., HARDESTY and PICKERING, JJ.

## OPINION

By the Court, HARDESTY, J.:

On November 10, 2010, this court entered an order denying this petition for a writ of mandamus. Petitioner timely petitioned for rehearing, which, after real parties in interest filed an answer, we granted in a summary order on March 10, 2011. We granted rehearing because we overlooked a material question of law regarding the application of NRS 706.473(1). We now issue this opinion to explain how the material question of law was overlooked, and we address important issues of law presented by this original petition.

In this petition, we examine whether a statutorily recognized independent contractor relationship between a taxicab business and its driver, under NRS 706.473, prevents liability for the taxicab business sued under a respondeat superior theory of liability. In addressing this issue, we must first consider whether NRS 706.473(1), which authorizes the leasing of taxicabs to independent contractors in counties with populations of less than 400,000, applied to Washoe County on the date that the underlying motor vehicle incident is alleged to have occurred. To answer this question, we take the opportunity to highlight the application of NRS 0.050, which defines the term "population," as used in various Nevada Revised Statutes when another meaning for that term is not expressly provided in the statute or otherwise required by the statute's context. Because NRS 706.473 does not define population or the date for determining the population of a given county, NRS 0.050 guides our analysis. We conclude that NRS 0.050 directs the application of the United States Census rather than any state-produced tables, and at the time of the underlying incident, the population in Washoe County for purposes of NRS 706.473 was less than 400,000 based on the 2000 United States Census.[1]

The district court concluded that the nature of the relationship between the taxicab company and the cabdriver was a question of fact for the jury, without addressing NRS 706.473's potentially dispositive application. While we decline here to depart from this court's general policy of not considering writ petitions challenging the denial of summary judgment, and therefore do not order the district court to vacate its denial of summary judgment, we nevertheless note that the district court may wish to reconsider its reasoning for denying summary judgment in light of the analysis set forth below.

---

[1]In 2011, NRS 706.473 was amended to increase the less-than-400,000 population limit to less than 700,000. *See* A.B. 545, 76th Leg. (Nev. 2011).

## PROCEDURAL BACKGROUND

Real party in interest Kelly Encoe alleged that he was struck, on June 14, 2007, by a taxicab owned by petitioner Yellow Cab of Reno, Inc., and driven by Timothy Fred Willis in Reno, Nevada. In his second amended district court complaint, Encoe asserted that Willis was a Yellow Cab employee and that Willis's cab struck Encoe while Willis was acting in the course and scope of his employment with Yellow Cab. As a result, Encoe argued that Yellow Cab was liable for Encoe's injuries under a respondeat superior theory.

Yellow Cab moved the district court for summary judgment, arguing that NRS 706.473 authorized it to lease the taxicab to Willis, as an independent contractor, and because Willis was an independent contractor, Yellow Cab could not be held liable for the incident under a respondeat superior theory. More specifically, Yellow Cab directed the district court to the terms of the taxicab lease it signed with the cabdriver and argued that since the lease complied with the regulations authorized by NRS 706.475, the relationship must be construed, as a matter of law, as that of an independent contractor as mandated by NRS 706.473.

Encoe and his employer at the time of the alleged incident, real party in interest Granite Construction (collectively, Encoe), opposed the motion. In his opposition, Encoe argued that although NRS Chapter 706 authorizes taxicab companies such as Yellow Cab to lease taxis to independent contractors, facts that would be established, if discovery was permitted, would demonstrate that the cabdriver was, in fact, an employee of Yellow Cab, given the degree of control Yellow Cab exercised over the cabdriver. Encoe then highlighted certain facts that he argued demonstrated the high level of control Yellow Cab exercised over the cabdriver. Yellow Cab filed a reply to the opposition.

The district court entered an order denying Yellow Cab's motion for summary judgment, as it determined that the question of whether a party is an employee or an independent contractor was a question of fact, and thus, Willis's status as an employee or independent contractor was a question of fact for the jury to resolve. The district court did not address Yellow Cab's NRS 706.473 argument that, by statute, Willis is an independent contractor, which may preclude respondeat superior liability against a compliant cab company.

Yellow Cab subsequently filed the instant writ petition challenging the district court's decision. Yellow Cab contended that extraordinary writ relief is warranted to correct the district court's failure to follow the dictates of directly applicable statutory and administrative authority, reiterating its argument from district court

that since the lease it entered into with the cabdriver complied with all regulations authorized by NRS 706.475, its relationship with the cabdriver must be construed as a matter of law as that of an independent contractor and that, accordingly, respondeat superior liability cannot attach.

As directed, Encoe filed an answer to the petition, in which he primarily argued that NRS 706.473(1) merely permits the existence of an independent contractor but that it in no way necessarily follows that the statute compels, as a matter of law, a determination that a driver is an independent contractor rather than an employee. Encoe therefore argued that NRS 706.473 does not alter the fact dependency of this particular inquiry.[2] Encoe further argued that NRS 706.473(1) does not apply because, by its plain language, that statute only applies in counties with populations of less than 400,000 people. Encoe asserts that Washoe County's population exceeded that amount as of the date of the accident, as confirmed by certified population statistics provided to Encoe by the Nevada State Demographer. Yellow Cab did not seek leave of this court to file a reply to Encoe's answer.

Because Encoe appeared correct that NRS 706.473(1) was inapplicable on population grounds, based on the Nevada State Demographer's tables, and because the central challenge to the district court order denying summary judgment presented by the writ petition was that the district court ignored NRS 706.473(1), on November 10, 2010, we denied Yellow Cab's petition for writ of mandamus.

In denying the writ petition, we noted Yellow Cab's argument that the district court ignored clear dispositive statutory and administrative authority, specifically NRS 706.473, NRS 706.475, and NAC Chapter 706, for which Yellow Cab insisted supported its contention that it has an independent contractor relationship with its cabdrivers, and therefore, it cannot be held liable under a respondeat superior theory. Further, we noted that Encoe's "answer and attached documentation ma[d]e clear, however, that these statutes are inapplicable as, under NRS 706.473(1), this authority only applies in counties with populations less than 400,000, and at the relevant time, 2007, Washoe County's population exceeded 400,000." Thus, we concluded that extraordinary relief was not warranted.

---

[2]As an additional point of statutory interpretation, Encoe also notes that NAC 706.3751, which implements NRS 706.473, is expressly phrased as applying to both employees and independent contractors, and argues that therefore NRS 706.473 cannot be read as mandating that a cabdriver be rendered an independent contractor as a matter of law since the existence of the employee language in the administrative code should equally allow Encoe to argue that NRS 706.473 renders a cabdriver an employee as a matter of law.

After the November 10 order was entered, Yellow Cab filed a petition for rehearing.[3] On rehearing, Yellow Cab argued that this court overlooked certain controlling statutory authority, specifically NRS 0.050, in concluding that NRS 706.473(1) did not apply on population grounds and denying its writ petition on that basis. Yellow Cab argued that NRS 0.050 directs that the population totals from the 2000 United States census be applied in this case, rather than any population table produced by this state's government. According to Yellow Cab, the census places Washoe County's population below 400,000 during the relevant time period, and thus, this court's conclusion that NRS 706.473(1) was inapplicable was incorrect.

Encoe filed an answer to the rehearing petition, as directed, and did not directly dispute Yellow Cab's NRS 0.050 argument. Instead, Encoe asserted that NRS 0.050 was immaterial because summary judgment was properly denied based on the various alternative arguments contained in the answer to the writ petition, including the argument that genuine issues of material fact remained so as to preclude summary judgment.

This court then entered an order granting the rehearing petition. Our rehearing order withdrew the original disposition of the writ petition and ordered the proceedings reinstated. We issue this opinion to explain our reasoning for granting the rehearing and to fully set forth the important issues and applicable law presented by this case.

### DISCUSSION

Based on the information provided by the parties' filings, it appeared that Washoe County's population was above the threshold 400,000 people on the date in question, and thus that NRS 706.473 was inapplicable. As Yellow Cab's central argument in its writ petition was that the district court manifestly abused its discretion in ignoring NRS 706.473 when it denied its motion for summary judgment, it appeared that Yellow Cab had not met its burden of demonstrating that writ relief is warranted. Accordingly, we declined to intervene and writ relief was denied.

As Yellow Cab failed to seek leave to file a reply to Encoe's answer, it effectively challenged Encoe's newly raised population analysis with his NRS 0.050 argument for the first time on rehearing. While Yellow Cab could have sought leave to file a reply in support of its writ petition, NRAP 21 is silent on any procedure for seeking leave to file a reply, and Yellow Cab asserted on rehearing that it was awaiting this court to order it to file a reply. Given this possible confusion, it appears that Yellow Cab presumed

---

[3]The Nevada Transportation Authority and the Nevada Taxicab Authority, as amici curiae, filed joinders to the petition for rehearing.

that it did not have the opportunity to file a response to Encoe's population-based argument prior to a rehearing petition. Thus, we elected to entertain the merits of the rehearing petition.

Regarding Yellow Cab's argument on rehearing, Encoe's population argument was presented for the first time in the mandamus proceeding before this court. In resolving Encoe's population argument, we necessarily relied on documents—the State Demographer's population statistics—that were not part of the district court record. Encoe did not cite to NRS 0.050, and based on his contentions that NRS 706.473(1) did not apply on population grounds, this court overlooked NRS 0.050, and our conclusion that NRS 706.473 did not apply to Washoe County at the time in question, based on the statute's population limitation, was incorrect. Therefore, this court misapprehended a legal issue and rehearing was warranted. NRAP 40(c)(2)(B).

Having explained our legal misapprehension, we now turn to the issues presented by this petition for a writ of mandamus.

*Propriety of writ relief*

A writ of mandamus is available to compel the performance of an act required by law as a duty stemming from an office, trust, or station, or to control an arbitrary or capricious exercise of discretion. *International Game Tech. v. Dist. Ct.*, 124 Nev. 193, 197, 179 P.3d 556, 558 (2008); *Round Hill Gen. Imp. Dist. v. Newman*, 97 Nev. 601, 603-04, 637 P.2d 534, 536 (1981). This court will generally not exercise its discretion to consider petitions for extraordinary relief challenging the denial of a summary judgment motion. *Smith v. District Court*, 113 Nev. 1343, 1344, 950 P.2d 280, 281 (1997). Moreover, the right to appeal, after a final judgment is ultimately entered, will constitute a speedy and adequate remedy that precludes extraordinary writ relief. *International Game Tech.*, 124 Nev. at 197-98, 179 P.3d at 558-59. Even so, writ relief may, in some cases, be appropriate when a case is at the early stages of litigation and policies of judicial administration apply. *Id.* at 198, 179 P.3d at 559. And this court may consider a writ petition when important issues of law need clarification "and considerations of sound judicial economy and administration militate in favor of granting the petition," *id.* at 197-98, 179 P.3d at 559, or to further public policy. *Sonia F. v. Dist. Ct.*, 125 Nev. 495, 498, 215 P.3d 705, 707 (2009).

Here, we conclude that this case does not necessitate a departure from this court's general policy of declining to exercise our discretion to consider petitions challenging the denial of a summary judgment motion, and therefore we deny writ relief. *Smith*, 113 Nev. at 1344, 950 P.2d at 281. Nevertheless, as this writ petition presents an important issue of law concerning the application of

NRS 706.473 that needs clarification and highlights the existence of NRS 0.050, and as the issue may be case concluding, judicial economy warrants our consideration of this petition for extraordinary relief.

*NRS 706.473 applied to Washoe County*

In Encoe's complaint, he alleges that the underlying traffic incident occurred on June 14, 2007, in Reno, Nevada. Reno is located in Washoe County. At that time, NRS 706.473(1) provided, in relevant part, that

> [i]n a county whose population is less than 400,000, a person who holds a certificate of public convenience and necessity which was issued for the operation of a taxicab business may, upon approval from the [Nevada Transportation] Authority, lease a taxicab to an independent contractor who does not hold a certificate of public convenience and necessity.

To support his contention that Washoe County's population exceeded 400,000 at the time of the incident, Encoe relies on certified statewide population statistics provided by the Nevada State Demographer. These population tables indicate that Washoe County's population on July 1, 2006, was 409,085, and that it had grown to 418,061 by July 1, 2007.

Encoe's reliance on the data provided by the Nevada State Demographer to support his contention that NRS 706.473 does not apply is misplaced, however, because it ignores NRS 0.050, which provides, in relevant part, that unless

> otherwise expressly provided in a particular statute or required by the context, "population" means the number of people in a specified area as determined by the last preceding national decennial census conducted by the Bureau of the Census of the United States Department of Commerce pursuant to Section 2 of Article I of the Constitution of the United States and reported by the Secretary of Commerce to the Governor pursuant to 13 U.S.C. § 141(c).

Because NRS 706.473 does not expressly provide that a different population figure, other than the last preceding national decennial census, should be used when determining the statute's application and nothing in the statute's context requires a different definition of the term population, pursuant to NRS 0.050, the population figure provided in the last preceding national decennial census is used to determine whether NRS 706.473 applies to this dispute. *See J.E. Dunn Nw. v. Corus Constr. Venture*, 127 Nev. 72, 79, 249 P.3d 501, 505 (2011) (applying NRS 0.025(2)'s explanation of the

arrow symbol as indicating a flush line to NRS 108.22112); *Boucher v. Shaw*, 124 Nev. 1164, 1168, 196 P.3d 959, 962 (2008) (referring to NRS 0.039's definition of the term "person"); *Baldonado v. Wynn Las Vegas*, 124 Nev. 951, 963 n.29, 194 P.3d 96, 104 n.29 (2008) (noting NRS 0.025(1)(a) instructions for the use of the term "may" in the Nevada Revised Statutes); *Glover v. Concerned Citizens for Fuji Park*, 118 Nev. 488, 493 & n.8, 50 P.3d 546, 549 & n.8 (2002) (explaining that, under NRS 0.033, Carson City is treated as a county by the Nevada Revised Statutes), *disapproved on other grounds by Garvin v. Dist. Ct.*, 118 Nev. 749, 59 P.3d 1180 (2002).

The relevant inquiry in the present matter, then, is whether Washoe County had a population of 400,000 or more people on June 14, 2007, the date on which the alleged incident occurred. Applying NRS 0.050, on that date, the last preceding national decennial census would have been the 2000 census. According to the 2000 census figures, Washoe County had a population of 339,486, which places its population below 400,000 during the relevant time period.[4] As a result, we conclude that NRS 706.473 applied to Washoe County at the time of the alleged incident, and we reject Encoe's assertion that the statute is inapplicable to this dispute.

*District court's failure to address Yellow Cab's NRS 706.473 argument*

Having concluded that the application of NRS 706.473 to the instant dispute is not barred on population grounds, we now turn to the district court's review of Yellow Cab's NRS 706.473-based independent contractor argument. Traditionally, a determination as to whether an individual is an employee or an independent contractor for the purposes of respondeat superior liability turns on the degree of control the purported employer exercises over the individual. *See, e.g., Rockwell v. Sun Harbor Budget Suites*, 112 Nev. 1217, 1223, 925 P.2d 1175, 1179 (1996) (explaining that liability for acts of the individual would attach for respondeat superior purposes if it is established that the individual was under the control of the purported employer and the individual's acts were within the scope of the employment). And this court has previously held that the determination of this issue is generally a factual question. *Kornton v. Conrad, Inc.*, 119 Nev. 123, 125, 67 P.3d 316, 317 (2003) (stating that "[g]enerally, the trier of fact determines 'whether an employee was acting within the scope of his or her employment' when the tortious act occurred" (quoting *Evans v. Southwest Gas*, 108

---

[4]We take judicial notice of the 2000 U.S. Census. NRS 47.130 (permitting judicial notice of facts "[c]apable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned").

Nev. 1002, 1005, 842 P.2d 719, 721 (1992), *overruled on other grounds by GES, Inc. v. Corbitt*, 117 Nev. 265, 268 n.6, 21 P.3d 11, 13 n.6 (2001))).

As Yellow Cab points out, however, NRS 706.473 specifically authorizes the licensing of a taxicab to an independent contractor if the requirements of that statute and any administrative regulations promulgated in accordance with NRS 706.475 are met.[5] Thus, under the statutory scheme, the existence of this statutorily created independent contractor relationship turns not on the issue of control, but on whether all of the statutory and administrative requirements for creating such an independent contractor relationship have been satisfied. The statute is silent, however, as to whether the creation of an independent contractor relationship under that statute acts to bar the application of respondeat superior liability as is the case under traditional independent contractor relationships.

Unfortunately, despite the fact that the parties had briefed this issue, the district court failed to address Yellow Cab's NRS 706.473 argument. Instead, in denying Yellow Cab's summary judgment motion, the district court summarily concluded, without explanation or analysis, that whether Willis was an independent contractor or an employee was a question of fact for the jury to decide. As this issue was fully briefed, the district court should have determined whether a statutorily recognized independent contractor relationship, established through compliance with NRS 706.473 and the regulations promulgated in accordance with NRS 706.475, would allow Yellow Cab to avoid liability under a respondeat superior analysis.[6] If that question was answered in the affirmative, then the district court should have determined whether, in this case, all of the statutory and administrative requirements for creating an NRS 706.473-independent-contract relationship between Willis and Yellow Cab have been met.

While the district court did not render a thorough resolution of the issues before it on summary judgment, this court will generally not exercise its discretion to consider a writ petition chal-

[5]NRS 706.475(1)(b) directs the Nevada Transportation Authority to adopt regulations implementing NRS 706.473 to make certain that ''the taxicab business remains safe, adequate and reliable.'' The corresponding administrative code provisions, NAC 706.375-.3754, address matters of licensing, insurance, safety, and recordkeeping.

[6]While this court has held that such liability can be avoided when a traditional independent contract relationship is found to exist, the issue of whether an NRS 706.473-statutory-independent-contract relationship bars respondeat superior liability has not been addressed by this court. As the district court failed to address this issue in denying Yellow Cab's summary judgment motion, we decline to consider this issue in the first instance.

lenging a denial of summary judgment.[7] *Smith*, 113 Nev. at 1344, 950 P.2d at 281. Our denial of the writ petition, however, is without prejudice to the district court re-evaluating the propriety of summary judgment regarding Yellow Cab's NRS 706.473-based independent contractor argument in light of the analysis set forth in this opinion.

DOUGLAS, C.J., and PICKERING, J., concur.

---

[7]We reject Yellow Cab's request for writ relief as to the district court's order allowing Encoe to amend his complaint. *See Round Hill Gen. Imp. Dist. v. Newman*, 97 Nev. 601, 603-04, 637 P.2d 534, 536 (1981) (noting that mandamus will not lie to control the district court's exercise of discretion unless that discretion is manifestly abused or exercised arbitrarily or capriciously).