137 Nev., Advance Opinion 36

# IN THE SUPREME COURT OF THE STATE OF NEVADA

JEFF MYERS, INDIVIDUALLY AND
ON BEHALF OF OTHERS SIMILARLY
SITUATED,
Appellant,
vs.
RENO CAB COMPANY, INC.,
Respondent.

No. 80448

**FILED**

JUL 29 2021

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK

ARTHUR SHATZ AND RICHARD
FRANTIS, INDIVIDUALLY AND ON
BEHALF OF OTHERS SIMILARLY
SITUATED,
Appellants,
vs.
ROY L. STREET, INDIVIDUALLY AND
D/B/A CAPITAL CAB,
Respondent.

No. 80449

Consolidated appeals from a district court order granting summary judgment in minimum wage matters. Second Judicial District Court, Washoe County; Elliott A. Sattler, Judge.

*Reversed and remanded.*

Leon Greenberg Professional Corporation and Leon M. Greenberg, Las Vegas,
for Appellants.

Simons Hall Johnston PC and Mark G. Simons, Reno,
for Respondents.

BEFORE THE SUPREME COURT, EN BANC.

21-21961

*OPINION*

By the Court, STIGLICH, J.:

The central issue in these consolidated cases is a familiar one: are the appellants "employees" or "independent contractors," and how do we tell?[1] The answer will depend on the legal context. To say that a worker is an "employee" for the purpose of a particular law usually means that the worker falls within that law's scope of coverage. But different laws may have different scopes of coverage, and so the same worker may be an "independent contractor" as concerns one law and an "employee" as concerns another.

In this opinion, we clarify that employee status for purposes of the Minimum Wage Amendment to the Nevada Constitution (MWA) is determined only by the "economic realities" test, but employee status for purposes of statutory waiting time penalties for late-paid wages may be affected by the presumption set forth in NRS 608.0155. We reaffirm that a contractual recitation that a worker is not an employee is not conclusive under either test. Finally, employee status for the purposes of either the MWA or NRS Chapter 608 is *not* affected by the Nevada Transportation Authority's (NTA) approval of a taxi lease under NRS 706.473. Because the district court held that the NTA's approval of appellants' leases foreclosed further inquiry into their employee status, we reverse and remand.

---

[1]*Cf.* Richard R. Carlson, *Why the Law Still Can't Tell an Employee When It Sees One and How It Ought to Stop Trying*, 22 Berkeley J. Emp. & Lab. L. 295 (2001).




*BACKGROUND*

The respondents are taxicab companies that lease taxicabs to the appellant drivers under agreements approved by the NTA, pursuant to NRS 706.473.[2] Each agreement contains the following language:

> RELATIONSHIP. Neither Party is the partner, joint venture, agent, or representatives of the other Party. LESSEE is an independent contractor. LEASING COMPANY and LESSEE acknowledge and agree that there does not exist between them the relationship of employer and employee, principal and agent, or master and servant, either express or implied, but that the relationship of the parties is strictly that of lessor and lessee, the LESSEE being free from interference or control on the part of LEASING COMPANY.

Each lease agreement requires the driver to operate the taxicab for at least three days per week, unless the driver obtains approval for an alternate schedule. On any day that the driver operates the taxicab, the driver must pay to the leasing company a nominal fee of 5 or 10 dollars, plus one-half of the driver's "total book" (i.e., gross receipts) for the day, plus gas and administrative fees. The lease agreement states that drivers have the option, but are not required, to use the companies' dispatch service to acquire passengers.

The drivers sued in 2015, alleging that their take-home pay was often less than the minimum hourly wage required by the MWA. The MWA only applies to "employees." Nev. Const. art. 15, § 16. The drivers alleged

---

[2]NRS 706.473(1) provides in relevant part that "a person who holds a certificate of public convenience and necessity which was issued for the operation of a taxicab business may, upon approval from the Authority, lease a taxicab to an independent contractor who does not hold a certificate of public convenience and necessity."

 

that, notwithstanding the recital in the lease agreement that they were independent contractors, they were in fact employees under the "economic realities" test we elucidated the previous year in *Terry v. Sapphire Gentlemen's Club*, 130 Nev. 879, 336 P.3d 951 (2014). Although *Terry* involved the *statutory* right to a minimum wage, *see id.* at 881, 336 P.3d at 953; *see also* NRS 608.250, the drivers argued that the same test should apply to their MWA claims. In addition, the drivers alleged that they were not paid all the wages they were owed at the time of separation, entitling them to waiting time penalties under NRS 608.040.

The cab companies moved for summary judgment, arguing that the drivers were independent contractors, not employees, for the purposes of the minimum wage laws. The district court initially denied the motion, finding that disputed issues of material fact prevented summary judgment. But it later granted the cab companies' renewed motion. It relied solely on the fact that the drivers held NTA-approved taxicab leases, reasoning that when the NTA approves a lease pursuant to NRS 706.473, it confirms that the parties to the lease have entered a "statutorily created independent contractor relationship." *See Yellow Cab of Reno, Inc. v. Second Judicial Dist. Court*, 127 Nev. 583, 592, 262 P.3d 699, 704 (2011). In the district court's view, a worker who is an independent contractor under NRS 706.473 is not an employee for any purpose, and thus the protections afforded to "employees" by the MWA and by NRS Chapter 608 did not apply. The drivers appealed, and this court has consolidated these appeals.

## DISCUSSION

The drivers stated two claims: one claim for unpaid minimum wages under the MWA, and one claim for waiting time penalties under NRS 608.040. The drivers are entitled to assert each claim only if they are "employees" under the relevant law. We first consider whether the

statement in the drivers' leases that they are independent contractors is conclusive as to employee status under these laws. Second, we consider whether the NTA's approval of the drivers' leases under NRS 706.473 is conclusive as to employee status under these laws. Finally, having held in *Doe Dancer I v. La Fuente, Inc.*, 137 Nev., Adv. Op. 3, 481 P.3d 860 (2021), that NRS 608.0155 does not govern employment status with respect to constitutional MWA claims, we consider whether that statute applies to NRS Chapter 608 claims that are derivative of an underlying constitutional violation.

*Standard of review*

"This court reviews a district court's grant of summary judgment de novo." *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005). The proper legal test for employee status under the MWA and NRS Chapter 608 is a question of law, which we also review de novo. *See Doe Dancer*, 137 Nev., Adv. Op. 3, 481 P.3d at 866. When the facts are undisputed, the existence of an employment relationship under a given test is a question of law that can be resolved at summary judgment. *See Terry*, 130 Nev. at 889, 336 P.3d at 958. But where material facts are genuinely disputed, summary judgment should be denied. *See Jaramillo v. Ramos*, 136 Nev. 134, 139, 460 P.3d 460, 465 (2020) (reversing summary judgment where genuine issue of material fact existed).

*A contractual disavowal of an employment relationship is not conclusive*

We dispose of the cab companies' simplest argument first. They contend that the recitation in the lease agreement that "LESSEE is an independent contractor" is conclusive evidence that the drivers are in fact independent contractors for MWA and NRS Chapter 608 purposes, and thus no application of any other test is necessary. As the district court correctly

recognized, that argument is squarely foreclosed by our caselaw. *Terry*, 130 Nev. at 882, 336 P.3d at 954 ("Particularly where, as here, remedial statutes are in play, a putative employer's self-interested disclaimers of any intent to hire cannot control the realities of an employment relationship."); *see also Doe Dancer*, 137 Nev., Adv. Op. 3, 481 P.3d at 865, 868-70 (concluding that dancers were employees under the MWA despite contract specifically disavowing any employment relationship—in all capitals, no less).

We note that employment relationships are by no means unique in their dependence on facts beyond the original contract. *Cf. Shaw v. Delta Airlines, Inc.*, 798 F. Supp. 1453, 1455 (D. Nev. 1992) (noting that whether the parties call their relationship a partnership, or believe it to be so, is "immaterial" in determining whether they are in fact partners). A dispute over whether a worker is an employee covered by remedial legislation cannot be resolved by the contract's statement to the contrary, any more than a dispute over whether a worker was paid can be resolved by the contract's statement that the worker will be paid every Friday. Just as a business may fail to *in fact* pay its workers on time, a business may fail to *in fact* treat its workers as independent contractors. The facts as proven in court control a worker's actual status.[3]

---

[3]Our continued refusal to treat a written disavowal of an employment relationship as conclusive, or even particularly persuasive, is supported by the overwhelming weight of authority. *See, e.g.*, *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 729 (1947) ("Where the work done, in its essence, follows the usual path of an employee, putting on an 'independent contractor' label does not take the worker from the protection of the [Fair Labor Standards] Act."); *S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 769 P.2d 399, 403 (Cal. 1989) ("The label placed by the parties on their relationship is not dispositive, and subterfuges are not countenanced."). Ultimately, "if it looks like a duck, walks like a duck and

In the face of this authority, the cab companies point only to *Kaldi v. Farmers Insurance Exchange*, 117 Nev. 273, 21 P.3d 16 (2001). There, we relied on a contract provision to find that no employment relationship existed. *Id.* at 278-79, 21 P.3d at 19-20. However, *Kaldi* was not concerned with any "remedial statute" or constitutional provision, *cf. Terry*, 130 Nev. at 882, 336 P.3d at 954, but only with an alleged *contractual* right to be free from termination except for good cause. *See Kaldi*, 117 Nev. at 279 & n.4, 21 P.3d at 20 & n.4 (citing *D'Angelo v. Gardner*, 107 Nev. 704, 712, 819 P.2d 206, 211-12 (1991), which discussed "contractual rights of continued employment" in context of tortious bad-faith discharge). Of course, if a plaintiff seeks to enforce a right given by the contract, then the contract's language will be highly relevant. If the drivers' claims here were similar to those in *Kaldi*, then *Kaldi* might well be controlling. But the claims are dissimilar. The drivers here seek to enforce a right that—if they are employees under the appropriate tests—is guaranteed to them by law, not by the contract. To the extent *Kaldi* might be misread as suggesting that a contractual recitation is dispositive of a worker's status under remedial employment laws, it serves as an example of the risk of confusion caused by using the terms "employee" or "employment relationship" without specifying the legal context.

Thus, we reaffirm that a worker is not necessarily an independent contractor solely because a contract says so. Instead, the court must determine employee status under the applicable legal test, based on

---

quacks like a duck, it must be a duck . . . even if it is holding a piece of paper that says it is a chicken." *Wild v. Fregein Constr.*, 68 P.3d 855, 861 (Mont. 2003); *see also Estrada v. FedEx Ground Package Sys., Inc.*, 64 Cal. Rptr. 3d 327, 335 (Ct. App. 2007).

all the relevant facts. Courts must not allow contractual recitations to be used as "subterfuges" to avoid mandatory legal obligations. *See S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 769 P.2d 399, 403 (Cal. 1989). Otherwise, our constitutional and statutory protections for workers could (and almost certainly would) be eviscerated by contracts of adhesion disavowing an employment relationship.[4]

*NRS 706.473 does not affect the test for employment status under either the MWA or NRS Chapter 608*

We now turn to the grounds on which the district court actually granted summary judgment. The drivers' leases were approved by the NTA pursuant to NRS 706.473, which permits a company to lease a taxicab to an independent contractor. We have held that when "all of the statutory and administrative requirements for creating . . . an independent contractor relationship [under NRS 706.473] have been satisfied," then a "statutorily created independent contractor relationship" exists as a matter of law. *See Yellow Cab*, 127 Nev. at 592, 262 P.3d at 704. The district court reasoned that because the NTA approved the drivers' leases and all other administrative requirements were satisfied, the relationship between the drivers and the companies is a "statutorily created independent contractor relationship."

---

[4]In their supplemental briefing, respondents urged for the first time that treating these plaintiffs as employees would impair the obligation of contracts, in violation of U.S. Constitution Article I, Section 10, and Nevada Constitution article 1, section 15. This belated argument is not properly before us, and so we decline to address it in detail, but we do note that a federal court recently rejected a similar challenge to California's employee misclassification statute. *Crossley v. California*, 479 F. Supp. 3d 901, 919-20 (S.D. Cal. 2020).

Next, the district court reasoned that because the drivers were independent contractors under NRS Chapter 706, they were not entitled to the protections of either the MWA or NRS Chapter 608. The district court erred at this step. Its analysis assumed that an independent contractor under NRS Chapter 706 is necessarily an independent contractor *for all purposes*. That assumption was unfounded. The phrase "independent contractor" does not have a single, universal meaning that is the same in all contexts and for all purposes. Rather, because different statutes have different scopes, it is not at all unusual for a worker to be classified as an independent contractor for some purposes and as an employee for others. *Dynamex Operations W., Inc. v. Superior Court*, 416 P.3d 1, 29 (Cal. 2018) ("[W]hen different statutory schemes have been enacted for different purposes, it is possible . . . that a worker may properly be considered an employee with reference to one statute but not another."); *cf. Gen. Dynamics Land Sys., Inc. v. Cline*, 540 U.S. 581, 595 n.8 (2004) (cautioning that "[t]he tendency to assume that a word which appears in two or more legal rules, and so in connection with more than one purpose, has and should have precisely the same scope in all of them . . . has all the tenacity of original sin and must constantly be guarded against"). For example, workers who would otherwise be considered "independent contractors may be deemed 'employees'" for the limited purposes of the Nevada Industrial Insurance Act. *Hays Home Delivery, Inc. v. Emp'rs Ins. Co. of Nev.*, 117 Nev. 678, 682, 31 P.3d 367, 369 (2001); *see* NRS 616A.210(1). Naturally, their status as employees for those limited purposes does not spill over and make them employees for other purposes. *See* NRS 616A.210(3); *see also, e.g., Alberty-Vélez v. Corporación de P.R. para la Difusión Pública*, 361 F.3d 1, 10 (1st Cir. 2004) (holding that a worker's status for purposes of Puerto Rican

SUPREME COURT
OF
NEVADA

(O) 1947A

unemployment insurance law was irrelevant to the same worker's status for purposes of federal antidiscrimination law).

We recognized in *Yellow Cab* itself that NRS Chapter 706's "statutorily created independent contractor relationship" did not necessarily have all of the same consequences as a "traditional independent contractor relationship[ ]." 127 Nev. at 592 & n.6, 262 P.3d at 704 & n.6. There, we explained that even though it is settled law that a *traditional* independent contractor relationship forecloses finding the principal liable in respondeat superior for the contractor's torts, the effect of the *statutory* relationship on such liability was a completely different question.[5] *Id.* Likewise, even if the existence of a traditional independent contractor relationship would take the worker outside the protection of the MWA and NRS Chapter 608, the existence of the statutory relationship might not. The district court's reliance on *Yellow Cab* was therefore misplaced. We must determine in the first instance whether NRS Chapter 706's "statutorily created independent contractor relationship" precludes coverage under either the MWA or NRS Chapter 608.

*NRS 706.473 cannot override the constitutional minimum wage guarantee*

NRS 706.473 plainly cannot preclude coverage under the MWA. We held in *Doe Dancer* that Nevada's Constitution guarantees a minimum wage to workers who satisfy the economic realities test. *See* 137 Nev., Adv. Op. 3, 481 P.3d at 867. Under the economic realities test, the court "examines the totality of the circumstances and determines whether, as a

---

[5]Because the district court in *Yellow Cab* had not addressed the effect of the statutory relationship on respondeat superior liability, we declined to answer this question in the first instance. 127 Nev. at 592-93, 262 P.3d at 704-05.



matter of economic reality, workers depend upon the business to which they render service for the opportunity to work." *Terry*, 130 Nev. at 886, 336 P.3d at 956 (emphasis omitted). Under this test, an independent contractor is one who, "as a matter of economic fact, [is] in business for himself." *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 570 (10th Cir. 1994). The inquiry is "not limited by any contractual terminology or by traditional common law concepts." *Id.* Rather, the economic realities test is "wide-reaching," *Terry*, 130 Nev. at 886, 336 P.3d at 956, in order to effectuate the "remedial purpose underlying the legislation." *Frankel v. Bally, Inc.*, 987 F.2d 86, 89 (2d Cir. 1993); *cf. Lehigh Valley Coal Co. v. Yensavage*, 218 F. 547, 552-53 (2d Cir. 1914) (Hand, J.) ("[W]here all the conditions of the relation require protection, protection ought to be given."). There are six main factors courts should consider, though these factors are not exhaustive. *Terry*, 130 Nev. at 888-89, 336 P.3d at 958.

When a person is entitled to a right under the constitution, we do not look to a statute to second-guess that entitlement, because "the principle of constitutional supremacy prevents the Nevada Legislature from creating exceptions to the rights and privileges protected by Nevada's Constitution." *Thomas v. Nev. Yellow Cab Corp.*, 130 Nev. 484, 489, 327 P.3d 518, 522 (2014); *see Doe Dancer*, 137 Nev., Adv. Op. 3, 481 P.3d at 872-73. Thus, if as a matter of economic reality a worker is dependent on the business to which she or he renders service, and is not in business for herself or himself, and is not subject to the MWA's express exceptions, then the worker is constitutionally entitled to be paid a minimum hourly wage for that service. This is true no matter the worker's status under NRS 706.473 or any other statute. To dispel any lingering uncertainty, we clarify that

*only* the economic realities test determines whether a worker is an employee for the purposes of the MWA.

> *The NTA's sweeping definition of "independent contractor" does not apply to NRS Chapter 608 waiting time penalty claims*

We now turn to the next question: does the NTA's approval of a driver's lease preclude the driver from employee status under NRS Chapter 608? The answer is somewhat less plain, because while the Legislature cannot take away a constitutional entitlement, the Legislature can presumably limit the scope of statutory entitlements. Here, it has chosen to exclude "[t]he relationship between a principal and an independent contractor" from the statutory protections of NRS Chapter 608. NRS 608.255. But as we recognized in *Yellow Cab*, "independent contractor" may have different meanings depending on context. 127 Nev. at 592, 262 P.3d at 704; *cf. Dynamex*, 416 P.3d at 29. The issue is therefore whether a driver whose lease is approved by the NTA, after satisfying all relevant requirements, is necessarily an independent contractor *for purposes of NRS Chapter 608* and NRS 608.255 in particular.

We conclude that the answer, again, is no. NRS 706.473 permits a taxicab company to lease cars to independent contractors. But the NTA's own regulations define an "independent contractor," for the purposes of NRS Chapter 706, as "a person who leases a taxicab from a certificate holder pursuant to NRS 706.473." NAC 706.069; *see also* NAC 706.450(5). That circular definition is strikingly different from any definition familiar to employment law. The NTA's regulations set forth certain requirements for the lease, none of which appear to distinguish independent contractors from employees in a meaningful way. *See, e.g.*, NAC 706.5551, .5557. The NTA "shall approve" a lease agreement that meets those requirements. NAC 706.5555(2).



Thus, according to the plain language of NAC 706.069, *no* lease can ever be disapproved on the grounds that the lessee is in fact an employee rather than an independent contractor, because any lessee is necessarily an independent contractor for purposes of NRS Chapter 706. That is powerful evidence that the "statutorily created independent contractor relationship" referred to in *Yellow Cab* is of a fundamentally different type than the independent contractor relationships relevant to the MWA or NRS Chapter 608. And this makes sense: the NTA is concerned with the regulation of motor vehicles, not with the financial protection of workers.[6]

Therefore, consistent with the principle that a worker's status as an employee or independent contractor depends on the legal context, *cf. Hays Home Delivery*, 117 Nev. at 682, 31 P.3d at 369, we hold that the "statutorily created independent contractor relationship" recognized in *Yellow Cab* is distinct from independent contractor status for MWA or NRS Chapter 608 purposes. For the purposes of NRS Chapter 706, "independent contractor" means nothing more or less than a person who leases a taxicab

---

[6]Respondents urge that the NTA is tasked with ensuring drivers receive "reasonable compensation," citing NRS 706.151(1)(b). This seriously misrepresents that statute, which is a legislative declaration that *the State* should be compensated, through license fees, by private parties who use publicly maintained highways for profit. Respondents also appear to argue that the Legislature's choice to regulate certain aspects of an industry shows an intent to exclude that industry's workers from employment laws, citing *Nevada Employment Security Department v. Capri Resorts, Inc.*, 104 Nev. 527, 528, 763 P.2d 50, 52 (1988). But in *Capri Resorts*, a statute expressly excluded "licensed real estate salesperson[s]" from the protections of the Unemployment Compensation Law. NRS 612.133. The issue was whether timeshare salespersons were "licensed real estate salespersons" within that statute. A comparable statement about cab drivers is conspicuously absent from NRS Chapter 608.

from a certificate holder under an approved lease. NAC 706.069. When a cab company and a driver enter into that relationship, they submit to the jurisdiction of the NTA and acknowledge that they are subject to the regulations that govern independent contractors who lease taxicabs. But to determine whether such a person is an independent contractor for MWA or NRS Chapter 608 purposes, the court must separately engage with the facts under the appropriate test. The district court therefore erred in granting summary judgment on the ground that the NTA's approval of the drivers' leases rendered them independent contractors, and not employees, for all purposes.

*NRS 608.0155 may affect a worker's entitlement to waiting time penalties*

Because we have concluded that NRS 706.473 does not distinguish this case from *Doe Dancer*, the MWA claims are clearly governed by the economic realities test. 137 Nev., Adv. Op. 3, 481 P.3d at 867. But what about the waiting time penalties claim? Following our decision in *Terry*, the Legislature sought to clarify the scope of NRS Chapter 608 by setting forth a more structured test for independent contractor status under that chapter. NRS 608.0155; *see* 2015 Nev. Stat., ch. 325, § 1, at 1742-44. This test does not entirely supplant the economic realities test we announced in *Terry*: the defendant's failure to establish independent contractor status under NRS 608.0155 does not automatically mean the plaintiff is an employee, *see* NRS 608.0155(3), and thus a plaintiff must still *at least* satisfy the economic realities test in order to prevail. But, if NRS 608.0155 applies, then the plaintiff now must *also* defeat an attempt by the defendant to establish independent contractor status under the statutory test. Even if it is likely that many workers' employment status will be the same under both tests, there are sure to be cases at the margins where NRS 608.0155 excludes workers who are employees under the economic realities

SUPREME COURT
OF
NEVADA

(0) 1947A

14

test. Thus, we must decide whether NRS 608.0155 applies to the waiting time penalties claim.

In *Doe Dancer*, we held that "the definition of independent contractor in NRS 608.0155 (or Section 1 of S.B. 224) applies only to NRS Chapter 608 claims." 137 Nev., Adv. Op. 3, 481 P.3d at 871. While NRS 608.0155 does not apply to MWA claims, it must apply at least "to the statutory chapter in which it sits" if it is to apply to anything at all. *See id.* Waiting time penalties are an NRS Chapter 608 claim, and thus NRS 608.0155 would seem to apply, prima facie. Nevertheless, the drivers contend that they are entitled to seek waiting time penalties under subsection (B) of the MWA, which states that an aggrieved employee "shall be entitled to all remedies available under the law or in equity appropriate to remedy any violation of this section." Nev. Const. art. 15, § 16(B). In the drivers' view, waiting time penalties under NRS 608.040 can be used to remedy a violation of the MWA; thus, if they are employees for constitutional purposes, they may seek statutory waiting time penalties regardless of their status under NRS 608.0155.

We disagree. The plaintiffs each pleaded two separate claims for relief. First, as relief for their MWA claim, the plaintiffs sought "a judgment against the defendant for minimum wages owed . . . , a suitable injunction and other equitable relief barring the defendant from continuing to violate Nevada's Constitution, a suitable award of punitive damages, and an award of attorneys' fees, interest and costs . . . ." Separately, as relief for their NRS 608.040 claim, they sought "a judgment against the defendant for the wages owed to [the plaintiffs] as prescribed by [NRS] 608.040, to wit, for a sum equal to up to thirty days wages, along with interest, costs and attorneys' fees." The separateness of the claims for relief is clear. The

 

MWA's "all remedies available" provision allows an aggrieved employee to pursue appropriate remedies under the cause of action the MWA itself provides. Under that cause of action, the plaintiffs are in fact seeking back pay, injunctive relief, punitive damages, and attorney fees and costs.[7] But nothing in the MWA appears to enlarge the availability of a separate, statutory cause of action. A claim for waiting time penalties under NRS 608.040 requires the plaintiff to prove certain elements, and we do not read the MWA as abrogating those requirements. The worker must have resigned, quit, or been discharged; the employer must have failed to pay the wages when due, if the worker resigned or quit, or within 3 days of when due, if the worker was discharged; and the worker must be an "employee" within the meaning of NRS Chapter 608. Just as the MWA clearly does not make statutory waiting time penalties available to a worker who has not separated from employment, or to a worker who was promptly paid upon separation, we do not read it as making such penalties available to a worker who does not satisfy the statutory definition of "employee."

In sum, a defendant can show that a plaintiff is an independent contractor not subject to NRS Chapter 608 by showing either (1) that the plaintiff is an independent contractor under the economic realities test, *or* (2) that the plaintiff is an independent contractor under NRS 608.0155. If a plaintiff asserts only statutory claims, then a showing of independent contractor status under either test will justify summary judgment for the defendant. In contrast, when a plaintiff alleges *both* an MWA claim and an

_____

[7]In this section, we hold that a plaintiff who pleads and pursues a claim under NRS 608.040 must be an employee within the statutory definition. We have no occasion here to consider the precise scope of remedies available under the MWA itself.

 

NRS Chapter 608 claim, as here, the court will necessarily analyze the economic realities test at some point. Neither a contractual statement that the worker is an independent contractor, nor the NTA's approval of a taxicab lease, is conclusive under either test.

*Remand is necessary to resolve disputed factual issues*

Because both the economic realities test and the NRS 608.0155 test may be fact-intensive, it may not always be possible to resolve those questions at summary judgment. To be sure, the existence of an employment relationship is a question of law when no material facts are disputed, and we have in the past determined workers' status on appeal despite the district court's failure to apply the correct test. *See Doe Dancer*, 137 Nev., Adv. Op. 3, 481 P.3d at 868-70; *Terry*, 130 Nev. at 889-92, 336 P.3d at 958-60. Here, however, the district court expressly found that certain material facts were disputed. Among these were the extent of the drivers' control over their own work schedules; the extent of their control over which fares to pick up; whether they were in fact free to hire substitute drivers; and whether they were in fact free to work elsewhere. We agree that these facts are potentially material to the drivers' status under the MWA and NRS Chapter 608. Thus, we cannot decide as a matter of law whether the drivers are employees under either law. We therefore reverse the district court's grant of summary judgment and remand for further proceedings consistent with this opinion.

## CONCLUSION

A taxi driver is covered by the Minimum Wage Amendment if he or she satisfies the economic realities test. But that same taxi driver is *not* covered by NRS Chapter 608 if he or she is an independent contractor under NRS 608.0155. Both these inquiries can be fact-intensive, and in this case they cannot be resolved on the existing record. Finally, the NTA's

SUPREME COURT
OF
NEVADA

(O) 1947A

17

approval of a driver's lease pursuant to NRS 706.473 does not render the driver an independent contractor for purposes beyond NRS Chapter 706. Because the district court erroneously granted summary judgment on the basis of the NTA's approval of the drivers' leases, we reverse and remand for further proceedings consistent with this opinion.

_____, J.
Stiglich

We concur:

_____, C. J.
Hardesty

_____, J.
Cadish

_____, J.
Parraguirre

_____, J.
Silver

_____, J.
Herndon

Supreme Court
OF
Nevada

(O) 1947A

PICKERING, J., concurring:

I concur with much of the majority's analysis—as we have repeatedly and consistently held, the contractual disavowal of an employment relationship does not control whether a working relationship is that of an employer and employee within the meaning of the Minimum Wage Amendment (MWA) to the Nevada Constitution; instead, resolution of the question turns on the fact-intensive application of the economic realities test, which the majority correctly reiterates is the only applicable test for employment under the MWA. And I likewise agree that the Nevada Transportation Authority's approval of a driver's lease does not, in and of itself, demonstrate that the driver is an independent contractor for the purposes of Nevada's minimum wage laws. I write separately to make plain that, with regard to the majority's holding that "NRS 608.0155 may affect a worker's entitlement to waiting time penalties," I join on the understanding that this outcome results from the way the drivers pleaded their waiting time penalty claims in this particular case—as a distinct claim for relief, based in statute, NRS 608.040, separate and apart from their MWA claims.

Subsection (B) of the MWA inarguably endows a district court with broad remedial powers to rectify an MWA violation—"An employee claiming violation of this section may bring an action against his or her employer in the courts of this State to enforce the provisions of this section and *shall be entitled to all remedies available under the law or in equity* appropriate to remedy any violation of this section, including but not limited to back pay, damages, reinstatement or injunctive relief." Nev. Const. art. 15, § 16(B) (emphasis added). A remedy is "anything a court can do for a litigant who has been wronged or is about to be wronged." *Remedy, Black's*

*Law Dictionary* (11th ed. 2019) (quoting Douglas Laycock, *Modern American Remedies* 1 (4th ed. 2010)). And, at the time the MWA was proposed and ratified, waiting time penalties had long been statutorily available, as needed, to make an improperly compensated employee whole. *See Doolittle v. Eighth Judicial Dist. Court*, 54 Nev. 319, 322, 15 P.2d 684, 685 (1932) (awarding waiting time penalties under Comp. Laws 1925, § 2785, the predecessor to NRS 608.040, and noting the general principle that "[w]hen a person employs another, if he is honest, he expects to pay for the service, and should be ready to do so upon the completion of the work"). They were therefore also constitutionally incorporated, where appropriate to rectify an MWA violation, according to the plain meaning of the MWA's provision for "all remedies available." *See Strickland v. Waymire*, 126 Nev. 230, 234-35, 235 P.3d 605, 608-09 (2010) (holding that "[t]he goal of constitutional interpretation is 'to determine the public understanding of a legal text' leading up to and 'in the period after its enactment or ratification'" and that a later-enacted statute "cannot furnish a construction that the Constitution does not warrant") (quoting 6 Ronald D. Rotunda & John E. Nowak, *Treatise on Constitutional Law* § 23.32 (4th ed. 2008 & Supp. 2010)). And it follows that the Legislature's subsequent enactment of NRS 608.0155 could not extinguish the constitutional remedy as it then existed. *Doe Dancer I v. La Fuente, Inc.*, 137 Nev., Adv. Op. 3, 481 P.3d 860, 874 (2021) (Stiglich, J., concurring) (concluding that by enacting NRS 608.0155 "the Legislature intended to limit the scope of the MWA, [but] that it lacked the power to do so"); *Thomas v. Nev. Yellow Cab Corp.*, 130 Nev. 484, 489, 327 P.3d 518, 522 (2014) (stating that "the Constitution [is] superior paramount law, unchangeable by ordinary means") (internal quotation marks omitted).

Simply put, I join based on the understanding that the majority opinion does not foreclose the availability of waiting time penalties, among myriad other remedies, under the MWA's subsection (B) "all remedies" clause, where they are "available," "appropriate," and sought as part of the constitutional violation itself.

_____Pickering_____, J.
Pickering